ANTHONY DiORIO, Plaintiff-Appellee, *v.* THE CITY OF CHICAGO, Defendant-Appellant.—(CHICAGO AND NORTHWESTERN TRANSPORTATION CO., Defendant.)

First District (2nd Division)    No. 80-2227

Opinion filed August 25, 1981.

Stanley Garber, Corporation Counsel, of Chicago (Robert R. Retke and Frank W. Nagorka, Assistant Corporation Counsel, of counsel), for appellant.

Nevoral and Corrigan, Ltd., of Chicago (Bryan J. O'Connor, III, Bernard R. Nevoral, and James A. Corrigan, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff was injured when the tractor-trailer he was driving struck a railroad overpass in the city of Chicago. The overpass, property of the Chicago and Northwestern Transportation Company, was not marked with a clearance sign. Plaintiff sued, joining Chicago and Northwestern and the city of Chicago. Prior to trial, plaintiff arrived at a settlement with Chicago and Northwestern. The action against the city of Chicago proceeded, and the jury returned a general verdict for plaintiff in the amount of $45,000 and a special interrogatory finding plaintiff not contributorily negligent. Defendant city of Chicago appeals, contending that the city violated no duty to plaintiff, that a jury instruction was misleading, and that incompetent evidence was admitted.

Plaintiff is a truck driver employed by the South End Cartage Co. in Chicago. On October 7, 1974, plaintiff was hauling empty containers

from various railroad terminals to the south side premises of his employer. "Containers" are semi-trailers of standard size which are carried "piggyback" on railroad flatcars. In the afternoon of October 7, plaintiff drove his unladen tractor to a terminal at 3200 West Addision and hitched the tractor to an empty container. The cab of the tractor was about 10½ feet high and the trailer (container) was 13 feet high. Plaintiff routinely hauled trailers of this size.

Plaintiff proceeded west on Addison Street. At 3600 West Addison a railroad overpass crosses the street at an angle. Plaintiff had traveled this route numerous times with containers of the same size. On some prior trips, plaintiff had noticed a clearance sign before the overpass. On his most recent trip, about a month earlier, plaintiff did not see a clearance sign. On October 7, plaintiff saw no sign. Plaintiff approached the overpass at 5 to 10 miles per hour. Immediately in front of the structure plaintiff felt his truck bounce in the air, as if the truck had hit an object on the pavement. The left front corner of the trailer then struck the overpass. Because the structure crosses at Addison at an angle, the impact on the left front corner caused the tractor-trailer to tip on its right side. Plaintiff suffered a broken knee in the accident. After he was removed from the truck and placed on a stretcher, plaintiff looked to see what had caused the truck to bounce in the air. He noticed a raised patch in the left half of the traffic lane in which he had been driving. Plaintiff concluded that the left front tire of the tractor struck this patch and caused the empty trailer to bounce into the overpass.

Testimony from city employees revealed that a sign, indicating a clearance of 13 feet 3 inches, was first posted on westbound Addison Street in August 1972. The sign was replaced in April 1976. Photographs taken a few weeks after the accident showed no clearance sign on west bound Addison. An employee of the Streets and Sanitation Department testified that patching work was performed in the 3600 block of West Addison on two occasions during the second quarter (April, May and June) of 1974.

Plaintiff relies on Rule 606 of Illinois Commerce Commission General Order No. 138. Rule 606 provides:

> "On all overhead railroad structures having vertical clearance of less than 14′6″ clearance signs are to be furnished, installed, maintained, and replaced by and at the expense of the public authority having the duty of maintaining the signs along the highway requiring such signs * * *."

Defendant contends that another portion of General Order 138 precludes the applicability of Rule 606. Section 1 of General Order 138 details the "Scope and Application" of the order. Paragraph 2 of section 1 states:

> "This order shall not be retroactive in the sense of declaring or

implying that crossings already lawfully constructed, or installations of crossing protection now lawfully in place, are to be considered in violation of this order where such crossings or installations do not comply with the rules set forth herein. All lawfully existing crossings, and installations of crossing protection are hereby approved * * *."

Paragraph 117 of General Order 138 defines "crossing" as "any place where a public street or highway and a railroad cross either at grade or by separation of grades." Defendant points out that the crossing on Addison Street was constructed prior to the promulgation (on August 22, 1973) of General Order 138 and argues that paragraph 2 prevents application of the order to pre-existing structures. We do not agree, however, that paragraph 2 must be so interpreted. Paragraph 2 contains exemptions for "crossings already lawfully constructed" and "installations of crossing protection not lawfully in place." There is no issue concerning the actual construction of the Addison Street overpass; the controversy herein concerns "crossing protection," *i.e.*, a clearance warning sign. We decline to equate the absence of a warning sign with "installations of crossing protection now lawfully in place."

■■ The other paragraphs of the "Scope and Application" section of General Order 138 help to place paragraph 2 in context. Paragraph 3 states that Rules 205 through 211 (dealing with the maintenance requirements for grade crossings) apply to previously existing crossings. Paragraph 4 states that Rules 301 through 368 (dealing with the design and operation of grade crossing lights, gates, and signs) apply prospectively, except as specifically noted. Paragraph 5 states that Rules 201 through 204 (dealing with design requirements for grade crossings) apply prospectively. No mention is made of Rule 606 or the other rules pertaining to subways or viaducts.[1] It is understandable that the "Scope and Application" section restricts the retroactive applicability of rules bearing on the actual construction and design of grade crossing protection. We judicially note that there are thousands of grade crossings in the state of Illinois. To bring every grade crossing into compliance with General Order 138 would be a monumental task. We also note, however, that the more rudimentary forms of grade crossing protection (the crossbuck sign and the advance warning sign) are required on all grade crossings, including those predating the order. (See ICC General Order No. 138, Rules 303, 310 (revised, 1973).) These warning signs are analogous to the clearance warning sign required by Rule 606. Reading paragraph 2 in context, we conclude that it refers to grade crossings and not subways or viaducts.

---

[1] Paragraph 120 of General Order 138 defines a subway as a crossing where the street passes underneath the railroad. This is the configuration of the Addison Street crossing.

Since Rule 606 refers to "all overhead railroad structures", we hold that it applies to overpasses constructed prior to the promulgation of General Order 138. We therefore find that Rule 606 obligates the city of Chicago to maintain a clearance sign at the Addison Street crossing.

■■ Defendant also contends that a jury instruction was misleading. The instruction in question related the substance of Rule 606 and stated, in the format of the appropriate IPI instruction (see Illinois Pattern Jury Instructions, Civil, No. 60.01 (2d ed. 1971)), that the jury could consider a violation of the rule together with all other facts in determining whether the defendant was negligent. The instruction was a correct statement of law. When a statute or ordinance is intended to protect human life or property and the plaintiff is in the class intended to be protected, a violation of the statute or ordinance that proximately causes plaintiff's loss is *prima facie* evidence of negligence. (See *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 417-18, 170 N.E.2d 881.) In *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93, our supreme court applied this rule to the violation of an administrative regulation designed to protect human life or property. See *Davis*, at 390; see also *Barthel v. Illinois Central Gulf R. R. Co.* (1978), 74 Ill. 2d 213, 219, 384 N.E.2d 323 (considering a violation of General Order 138 as *prima facie* evidence of negligence).

■■ Defendant argues that the instruction should have included both Rule 606 and paragraph 2, which, in defendant's view, renders Rule 606 inapplicable. Defendant's position is insupportable. The applicability of Rule 606 is a question of law hinging on the construction of the retroactivity language in paragraph 2. The construction and interpretation of a statute or regulation is a matter for the trial court and should not be made the subject of a jury instruction. (See *Jackson v. Hursey* (1954), 1 Ill. App. 2d 598, 604, 118 N.E.2d 348; *Pennsylvania Co. v. Frana* (1883), 13 Ill. App. 91, 97.) If paragraph 2 is construed in conformity with defendant's contentions (a construction we have rejected, see above), then Rule 606 is inapplicable and should not be included in the instruction to the jury. In no event should both paragraphs 2 and Rule 606 be included in an instruction.

Defendant also contends that it has immunity by virtue of section 3—104(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, par. 1—101 *et seq.*). Section 3—104(a) provides:

> "Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating signs."

Defendant cites the case of *Hermann v. City of Chicago* (1973), 16 Ill.

App. 3d 696, 306 N.E.2d 516, which presents a situation in some respects similar to that in the case at bar. In *Hermann*, the plaintiff's truck struck an overhead structural member (not part of a railroad overpass) that did not have a clearance sign. The court in *Hermann* cited section 3—104(a) and concluded that the defendant city of Chicago had no duty to post a clearance sign. (See *Hermann*, at 701.) However, the court in *Hermann* failed to distinguish between regulatory traffic control signs and warning signs. For this reason, we decline to follow *Hermann*. In the recent case of *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 404 N.E.2d 213, our supreme court noted the difference between regulatory signs and warning signs and found that the latter class does not not come within the purview of section 3—104(a). (See *Janssen*, at 453.) In *Janssen*, a motorcyclist collided with a safety island that projected into the traffic lane. The defendant municipality argued that, by virtue of section 3—104(a), it had no duty to post a "keep right" sign. Our supreme court found that the necessary sign was a warning sign rather than a regulatory sign. The court found that a municipality's duty to post warnings signs is codified in section 3—104(b) of the Act:

"(b) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to provide traffic warning signals, signs, markings or other devices unless such a signal, sign, marking or device was necessary to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care." (Ill. Rev. Stat. 1979, ch. 85, par. 3—104(b).)

See *Janssen*, at 450, 453.

■■ The case at bar involves a sign indicating low clearance, a condition which is hazardous to certain vehicles. Whether a clearance sign in a given situation gives notice of a hazard "which would not be reasonably apparent to or anticipated by a person in the exercise of due care" is likely to be a question for the trier of fact. In any event, we find that a clearance sign is not a "traffic regulating sign" within the meaning of section 3—104(a) and the immunity provided by that section is therefore unavailable to defendant herein.

The court in *Hermann* also relied on several cases finding that railroads have no duty to post clearance signs at properly constructed subways. (See, *e.g., Kutsenkow v. Chicago & North Western Ry.* (1968), 99 Ill. App. 2d 265, 269, 240 N.E.2d 805; *Carr v. Chicago & North Western Ry. Co.* (1948), 333 Ill. App. 567, 572, 77 N.E.2d 857.) These cases are inapposite insofar as they refer to the duty of the railroad. The municipality's duty stands on a different footing: the municipality is obligated to

warn motorists of hazards adjacent to the roadway, even when the hazard itself is not within the control of the municipality. *Janssen*, at 444.

■■ Defendant also contends that it cannot be liable for failing to maintain a clearance sign, absent proof that it had actual or constructive notice that the sign (posted in 1972 and replaced in 1976) was missing. (See *Wilsey v. Schlawin* (1975), 35 Ill. App. 3d 892, 896, 342 N.W.2d 417; Ill. Rev. Stat. 1979, ch. 85, par. 3—102(a).) Plaintiff points out that defendant's "notice" objection has not been timely made. Defendant did not address the notice issue at trial and in its post-trial motion defendant did not allege that notice was insufficiently proved. A party appealing from the denial of a post-trial motion cannot raise points not included in that motion. (Ill. Rev. Stat. 1979, ch. 110A, par. 366(b)(2)(iii); see *Hammonds v. Inland Tugs Co.* (1979), 75 Ill. App. 3d 377, 379, 393 N.E.2d 1328.) Even if this point has not been waived, we do not find it meritorious. The issue of whether the city had constructive notice of the missing clearance sign was a question of fact for the jury. (See *Baker v. City of Granite City* (1979), 75 Ill. App. 3d 157, 161, 394 N.E.2d 33.) That issue could properly have been resolved in plaintiff's favor.

■■ Defendant's final contention on appeal is that the trial court improperly admitted testimony from Frank Bonara, an investigator with the office of the Corporation Counsel of the city of Chicago. On May 8, 1980, the first day of trial, Bonara went to the scene of the accident and observed that there was a clearance sign on westbound Addison Street. On the second day of trial, plaintiff called Bonara as a witness and elicited this fact. Defendant objected to Bonara's testimony on grounds of attorney-client privilege. The trial court overruled the objection. Defendant now asserts that Bonara's testimony should have been barred because the presence or absence of a clearance sign in 1980 is irrelevant to the issue of defendant's negligence in October 1974. At the time of trial, however, defendant did not object to the relevance of Bonara's testimony. A specific objection to evidence operates as a waiver of all grounds not specified in the objection. (*Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 87, 392 N.E.2d 628.) Defendant failed to preserve his objection to the relevance of the questioned testimony and is therefore precluded from raising that issue of appeal.

In consideration of the foregoing, the judgment of the trial court is affirmed.

Affirmed.

HARTMAN, P. J., and PERLIN, J., concur.