JAMES BATTISFORE, Indiv. and as Special Adm'r of the Estate of John Battisfore, Deceased, Plaintiff-Appellant, v. FLORA MORAITES *et al.*, Defendants-Appellees.

Second District   Nos. 2—88—0733, 2—88—1064 cons.

Opinion filed July 17, 1989.

McLAREN, J., specially concurring.

Donald T. Morrison, of Donald T. Morrison & Associates, P.C., of Waukegan (Joseph T. Morrison, of counsel), for appellant.

Brydges, Riseborough, Morris, Franke & Miller, of Waukegan (Daniel Playfair Field, of counsel), for appellee City of Waukegan.

Kathryn A. Spalding and Gary W. Klages, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, of counsel), for appellee Outboard Marine Corporation.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, James Battisfore, individually and as special administrator of the estate of John Battisfore, deceased, appeals from orders of the circuit court of Lake County entered on April 18, 1988, July 28, 1988, and September 29, 1988. The order of April 18 granted the motion of defendant Outboard Marine Corporation (OMC) for summary judgment directed at count III of plaintiff's third amended complaint.

The order of July 28 granted OMC's motion to dismiss count II of plaintiff's fourth amended complaint. The order of September 29 granted the motion of defendant City of Waukegan (Waukegan) for summary judgment directed at count I of plaintiff's fourth amended complaint.

The issues presented on review are: (1) whether OMC owed plaintiff a duty under section 368 of the Restatement (Second) of Torts; (2) whether the circuit court erred in dismissing the wilful and wanton count in the fourth amended complaint against OMC; (3) whether Waukegan had a duty to warn of the hazard adjacent to the roadway even though on property not owned or controlled by Waukegan; and (4) whether this court lacks jurisdiction over plaintiff's appeal against OMC, as maintained in a motion to dismiss filed in this court by OMC.

Plaintiff's third amended complaint is in three counts. Count I is against Flora Moraites, the driver of the vehicle in which the deceased was riding as a passenger at the time of the occurrence, and was apparently settled during the course of the proceedings below. Count II is against Waukegan and alleges that on June 16, 1986, at 11:35 p.m., deceased was a passenger in a vehicle driven by Moraites on Sea Horse Drive, a roadway under Waukegan's jurisdiction. The complaint further alleges that at or near the 500 block of Sea Horse Drive the roadway curves sharply and turns abruptly, that there are immovable cement-filled barricade pillars located immediately adjacent to the roadway at various points along the curve, that on prior occasions vehicles have left the roadway at this location and struck the pillars, causing property damage and personal injury to occupants of vehicles that Waukegan had notice of, and that Waukegan had a duty to keep Sea Horse Drive in a safe condition for travel and to warn motorists of hazards adjacent to the roadway, which Waukegan failed to do. Plaintiff alleges that Waukegan was negligent in failing to warn of the sharp turn and of the hazards immediately adjacent to the roadway and to illuminate the roadway to disclose the sharp turn and adjacent hazards.

Count III is against OMC and alleges, *inter alia*, that OMC operated a factory adjacent to the 500 block of Sea Horse Drive, that OMC placed the barricade pillars adjacent to the roadway, that OMC had notice of prior collisions with the pillars, and that OMC violated its duty to keep its property free from artificial conditions which create a substantial risk of harm to those who foreseeably deviate from the roadway. Plaintiff alleged that OMC was negligent in placing the immovable type of barricades immediately adjacent to the roadway and in failing to warn of the existence of these barricades.

Following the filing of its answer and discovery by the parties, OMC filed a motion for summary judgment contending that plaintiff's decedent was a trespasser to whom no duty was owed. OMC argued further that there was no duty to guard against the type of injury sustained by plaintiff's decedent. Attached to the motion was the deposition of David Hoffman.

Hoffman testified that at the time of the occurrence he was employed by Pinkerton Security as a security guard at the OMC facility on Sea Horse Drive. He had arrived early for work that night and was seated in his automobile putting his work shoes on. He was parked in an OMC parking area off the roadway and outside a fenced-in parking lot for employees. The parking area he was in was just to the east of the curve where the accident occurred. He heard the engine of a vehicle which he believed to be coming at a high rate of acceleration, about 45 to 50 miles per hour, and saw the car go past him, enter the curve, put on its brake lights, and collide with a cement pillar. He could see well as there was fluorescent lighting for the parking lot and the area. He believed the speed limit on Sea Horse Drive was 30 to 35 miles per hour. The parties agree the speed limit was 30 miles per hour except at the curve, where it was 20 miles per hour.

Hoffman's testimony, and photographs of the scene identified by Hoffman and later included with Waukegan's motion for summary judgment, indicate that two yellow signs on a light pole located just to the east of where Hoffman was parked depict a sharp-turn warning arrow and a 20-miles-per-hour speed limit. On the other side of the parking area from where Hoffman was parked is the curve, which is further marked by another yellow sign with an arrow. The photographs also show that the roadway and the adjacent parking area are one continuous paved area in what appears to be a commercial and industrial complex. At the curve, there are several concrete pillars two or three feet in height spaced apart from each other and from which a guard rail stretches. The guard rail contains strips of illuminating or reflective materials, as shown in the pictures which were taken on the evening of the accident by Waukegan police. The pillars and the guard rail are about two feet off the road surface. Just behind the guard rail and the pillars is a fence on OMC's property where there is a parking lot and a loading area. The road is two lanes separated by an intermittent yellow line and, at the curve, by an additional solid yellow line.

Plaintiff's response to OMC's summary judgment motion included a document which indicated that the pillars were installed in 1976 by

OMC to protect OMC's fence from damage resulting from previous accidents where cars hit the fence. Thereafter, on April 18, 1988, the circuit court granted OMC's motion for summary judgment finding no duty was owed to plaintiff pursuant to section 368 of the Restatement (Second) of Torts. The court also found no reason to delay enforcement or appeal of the order pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)). Subsequently, on May 16, 1988, the court denied plaintiff's motion to reconsider but vacated the Rule 304(a) finding and allowed plaintiff leave to file a fourth amended complaint alleging a wilful and wanton misconduct count against OMC. The wilful and wanton count later filed against OMC was substantially the same as count III of the third amended complaint which had been decided on summary judgment except that it contained the allegations of wilful and wanton misconduct. The motion to reconsider also had attached documentary and deposition evidence of other accidents at the location of the curve.

OMC filed a motion to dismiss the wilful and wanton count pursuant to section 2—619 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—619) contending that there was no duty owed to plaintiff as previously decided in the summary judgment proceeding. The circuit court granted OMC's motion to dismiss and again made a Rule 304(a) finding. Plaintiff immediately filed a notice of appeal from the order of summary judgment granted on April 18, 1988, and the dismissal order of July 28, 1988.

On August 29, 1988, Waukegan filed a motion for summary judgment contending that it owed no duty to plaintiff's decedent to provide adequate illumination and to warn of conditions off the roadway not caused by it and, even if there was a duty to warn, it had done so and was not negligent. Waukegan attached photographs of the accident scene taken on the night in question and photographs taken at a later date. Depositions of Flora Moraites and several passengers in her car were also submitted to the court. All the depositions indicated that Moraites was travelling at a speed between 40 and 50 miles per hour. The court granted summary judgment in favor of Waukegan, finding that no duty was owed to plaintiff's decedent under section 3—102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 3—102(a)). Plaintiff has appealed this order as well, and this appeal has been consolidated in this court with plaintiff's appeal from the orders in favor of OMC.

On December 12, 1988, OMC filed a motion to dismiss the appeal pursuant to Supreme Court Rule 361 (107 Ill. 2d R. 361). OMC con-

tends that the court lacked jurisdiction because the notice of appeal was not timely filed. We ordered that this motion and plaintiff's response be taken along with the other issues presented on appeal.

The initial issue to be decided is whether this court has jurisdiction to consider plaintiff's appeal of the two orders relating to OMC. Relying on *Parrish v. Lee* (1988), 167 Ill. App. 3d 443, 521 N.E.2d 1188, OMC contends that the circuit court lost jurisdiction once it made the Rule 304(a) finding on April 18, 1988, in the order granting OMC's motion for summary judgment on count III of the third amended complaint. Thus, OMC maintains that the circuit court was without jurisdiction to entertain the subsequent motion to reconsider and to enter any other orders thereafter. According to OMC, the notice of appeal by plaintiff filed on June 28, 1988, from both orders against it was untimely as not filed within 30 days of the April 18, 1988, order in which the Rule 304(a) finding was recited.

In *Parrish v. Lee* (1988), 167 Ill. App. 3d 443, 521 N.E.2d 1188, the Appellate Court for the Third District held that the trial court divested itself of jurisdiction over a claim for relief where multiple claims for relief are involved once a Rule 304(a) finding was made as to a judgment on that claim. This comports with OMC's position. On the other hand, the dissenting opinion in *Parrish* (*Parrish*, 167 Ill. App. 3d at 447-49, 521 N.E.2d at 1190-91 (Heiple, J., dissenting)), the Appellate Court for the Fourth District, in *Cain v. Sukkar* (1988), 167 Ill. App. 3d 941, 521 N.E.2d 1292, and the Appellate Court for the First District, Third Division, in *Lake County Trust Co. v. Two Bar B, Inc.* (1989), 182 Ill. App. 3d 186, 537 N.E.2d 1015, take the position that the entry of a Rule 304(a) finding does not divest the circuit court of jurisdiction. This court has implicitly taken the latter position in *Schmall v. Village of Addison* (1988), 171 Ill. App. 3d 344, 350, 525 N.E.2d 258, and *Lewis v. Royal Globe Insurance Co.* (1988), 170 Ill. App. 3d 516, 519, 524 N.E.2d 1126. We do not agree with *Parrish* as it incorrectly applies *Elg v. Whittington* (1986), 149 Ill. App. 3d 307, 500 N.E.2d 568, *aff'd* (1987), 119 Ill. 2d 344, 518 N.E.2d 1232, to the issue before it, as pointed out in Justice Heiple's dissent in *Parrish*. Nor does our supreme court's decision in *Elg* (*Elg v. Whittington* (1987), 119 Ill. 2d 344, 518 N.E.2d 1232) address the issue before us.

■ Accordingly, as the part of the order of April 18, 1988, reciting the Rule 304(a) finding was vacated within 30 days of May 16, 1988, the trial court retained jurisdiction to entertain further motions and enter further orders. OMC's motion to dismiss the appeal against it is denied.

Turning to the merits of this appeal, we consider first plaintiff's

appeal of the order granting summary judgment for Waukegan on count I of the fourth amended complaint. The thrust of plaintiff's appellate contention is that Waukegan owed a duty to warn motorists of the hazard of cement-filled barricade pillars adjacent to the roadway on the curve in the roadway where there had been prior accidents, even though the hazard was not on the roadway or under the control of Waukegan. While plaintiff further argues that the warning signs of the curve in the roadway were insufficient to warn of the dangerous concrete pillars and a question of fact exists as to the adequacy of the signs placed by Waukegan, the duty issue is dispositive. No argument is presented on appeal relating to the adequacy of the lighting conditions at the accident site or the adequacy of the signs warning of the sharp curve itself, as alleged in the amended complaint.

■ Section 3—102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1985, ch. 85, par. 3—102(a)) provides:

> "(a) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in sufficient time prior to an injury to have taken measures to remedy or protect against such condition."

Although this statute would impose a duty to alter an unsafe condition on municipal property, the hazard complained of is not on Waukegan's property, and, in the absence of Waukegan's right of control over the property, Waukegan has no duty to alter the condition of the hazard. (See *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 443-44, 404 N.E.2d 213.) Nevertheless, plaintiff argues that Waukegan has a duty to warn of the hazard located on property adjacent to the roadway.

In *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 404 N.E.2d 213, our supreme court adopted the principle that a municipal unit which controls a roadway has a duty to warn motorists of hazards adjacent to the roadway even if the hazard itself is not within the control of the governmental unit. (*Janssen*, 79 Ill. 2d at 444-45, 404 N.E.2d at 217-18.) The court further found that a municipality's duty to warn motorists of dangerous conditions is codified in section

3—104(b) of the Tort Immunity Act, which provides:

> "(b) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to provide traffic warning signals, signs, markings or other devices unless such a signal, sign, marking or device was necessary to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care." (Ill. Rev. Stat. 1985, ch. 85, par. 3—104(b).)

(*Janssen*, 79 Ill. 2d at 450, 404 N.E.2d at 220.) In *Janssen*, the supreme court found a duty owed by the municipality to warn motorists of a hazard caused by a projecting portion of a traffic island in an area immediately past a street that the municipality controlled. *DiOrio v. City of Chicago* (1981), 99 Ill. App. 3d 1047, 425 N.E.2d 1223, cited by plaintiff, similarly held that a municipality had a duty to warn motorists of a low clearance of a railroad overpass even when the hazard itself was not within the control of the municipality. *DiOrio*, 99 Ill. App. 3d at 1052-53, 425 N.E.2d at 1228.

In *Janssen* and *DiOrio* the duty embodied in section 3—104(b) "to warn of a condition which endangered the safe movement of traffic" is implicated because there was an obstruction in or over the roadway which endangered the safe movement of traffic, even though the hazard was not on municipal property or controlled by the municipality. In the case at bar, however, the hazard complained of, cement pillars off the roadway on property not owned or controlled by Waukegan, has no effect on the safe movement of traffic. Thus, there is no duty imposed on Waukegan to warn under these circumstances. The entry of summary judgment is proper where only a question of law is involved, and, where it appears from the pleadings, affidavits, and depositions that no duty is owed by the defendant, the granting of summary judgment is proper. (*Barnes v. Washington* (1973), 56 Ill. 2d 22, 26-27, 305 N.E.2d 535.) The circuit court correctly granted summary judgment in favor of Waukegan even though not for the precise reason articulated by this court. See *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9.

Plaintiff next contends that the circuit court erred in entering summary judgment in favor of OMC on count III of plaintiff's third amended complaint which alleged negligence in OMC's placement and maintenance of concrete barricade pillars adjacent to the roadway. Plaintiff argues that the circuit court's conclusion that, as a matter of law, OMC owed no duty to plaintiff's decedent is erroneous.

Necessary to any recovery based on negligence is the exist-

ence of a duty to conform to a certain standard of conduct for the protection of the plaintiff. (*Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107, 116, 514 N.E.2d 188.) In this case, brought under the Wrongful Death Act, it is necessary that OMC owed a duty to plaintiff's decedent. Whether a duty exists is an issue of law to be determined by the court. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387; *Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 440, 484 N.E.2d 1088.) Reasonable foreseeability of injury is a key concern in determining whether a duty exists. (*Kirk,* 117 Ill. 2d at 526, 513 N.E.2d at 396.) Additionally, the question of duty in a negligence action should take into account the likelihood of injury, the magnitude of the burden of guarding against it and the consequence of placing that burden upon the defendant. *Kirk,* 117 Ill. 2d at 526, 513 N.E.2d at 396.

With respect to the duty of an owner of land abutting a public highway to protect travelers upon the highway who may come in contact with artificial conditions on the land, Illinois courts have been guided by section 368 of the Restatement (Second) of Torts. (Restatement (Second) of Torts §368 (1965); *Kavanaugh v. Midwest Club, Inc.* (1987), 164 Ill. App. 3d 213, 517 N.E.2d 656; *Boylan v. Martindale* (1982), 103 Ill. App. 3d 335, 431 N.E.2d 62; *Hoffman v. Vernon Township* (1981), 97 Ill. App. 3d 721, 423 N.E.2d 519; *West v. Faurbo* (1978), 66 Ill. App. 3d 815, 384 N.E.2d 457.) Section 368 provides:

> "A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
>
> (a) are traveling on the highway, or
>
> (b) foreseeably deviate from it in the ordinary course of travel." Restatement (Second) of Torts §368 (1965).

Plaintiff contends that it was foreseeable that cars would fail to negotiate the curve at the location of this accident. Plaintiff notes that on numerous other occasions cars have left the road at this curve. Therefore, plaintiff concludes a duty arose. Plaintiff also maintains that the fact that the driver of the car in which the decedent was a passenger might have been negligent would not prevent a duty from arising. We disagree.

The fact that it might be foreseeable that other travelers might come into contact with the cement blocks in the ordinary

course of travel does not create a duty in favor of plaintiff's decedent whose deviation was not in the ordinary course of travel. Section 368 of the Restatement provides that a possessor of land on which a dangerous artificial condition exists near a highway is "subject to liability for physical harm \*\*\* caused to *persons who* \*\*\* foreseeably deviate from it in the *ordinary course of travel.*" (Emphasis added.) (Restatement (Second) of Torts §368 (1965).) For a duty to attach, the person to whom it is owed must foreseeably deviate from the roadway in the ordinary course of travel. (*Kavanaugh,* 164 Ill. App. 3d at 218, 517 N.E.2d at 659-60; *Boylan,* 103 Ill. App. 3d at 344, 431 N.E.2d at 70.) As stated in comment *g* of section 368 of the Restatement (Second) of Torts, "[t]he distinction is thus not one between inadvertent and intentional deviations, but between those which are normal incidents of travel and those which are not." Restatement (Second) of Torts §368, comment *g*, at 270 (1965).

Here, plaintiff's decedent left the road and collided with the cement pillars on OMC's land while in a car travelling between 40 and 50 miles per hour around a clearly marked and illuminated sharp curve in a commercial area for which the general 30-miles-per-hour speed limit along the road was reduced to 20 miles per hour. Such deviation was not in the ordinary course of travel. (See *Hoffman,* 97 Ill. App. 3d at 726-27, 423 N.E.2d at 523.) In this context, plaintiff's assertion that the negligence of the driver of the vehicle did not prevent OMC from owing a duty to plaintiff's decedent misses the mark. The pertinent question is whether plaintiff's decedent foreseeably deviated from the road in the ordinary course of travel as would make it appropriate to impose upon OMC the burden of guarding against the occurrence. The undisputed facts show that the deviation of the vehicle in which plaintiff's decedent was a passenger was not a normal incident of travel and therefore no duty was owed. The distinction is not one between inadvertent and intentional deviations, but between those which are normal incidents of travel and those which are not. (Restatement (Second) of Torts §368, comment *g*, at 270 (1965).) Whether or not plaintiff's decedent was negligent is of no consequence because there is no duty owed to him by OMC under these circumstances.

This result is consistent with the considerations of duty which include, besides foreseeability, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing the burden upon the defendant. (*Osborne v. Sprowls* (1981), 84 Ill. 2d 390, 396-97, 419 N.E.2d 913.) Notice of the sharp curve and a reduced speed limit was adequately given, and the area was well illuminated.

The roadway runs through a commercial and industrial area where the buildings and fences of the abutting property owners are close to the roadway. The barricade pillars, while close to the roadway, protect OMC's property. We do not believe that a duty should be placed on OMC under the circumstances here to guard against injury to plaintiff's decedent who is injured while a passenger in a vehicle which goes off the roadway striking the barricade pillar while travelling at a speed of 40 to 50 miles per hour around a curve in a clearly marked 20-miles-per-hour speed zone.

*Michalak v. County of La Salle* (1984), 121 Ill. App. 3d 574, 459 N.E.2d 1131, and *Kubala v. Dudlow* (1958), 17 Ill. App. 2d 463, 150 N.E.2d 643, principally relied on by plaintiff, are inapposite to the instant case. *Kubala* merely involved the question of whether a cause of action had been pleaded and was not a review of a summary judgment proceeding as is the case here. In *Michalak*, the defendant was a county which had erected a guard rail, presumably on its property along the roadway, and did not involve liability of an adjacent property owner.

For the foregoing reasons, the circuit court properly granted summary judgment in favor of OMC as to count III of plaintiff's third amended complaint.

The last issue to be addressed is whether the circuit court erred in dismissing count II of the fourth amended complaint against OMC premised on OMC's wilful and wanton misconduct. The court below found that no duty was owed to plaintiff's decedent by OMC and dismissed the action based on OMC's motion pursuant to section 2—619 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—619).

■ It is apparent that the circuit court dismissed count II of the fourth amended complaint on the same basis that it entered summary judgment for OMC on count III of plaintiff's third amended complaint, that no duty was owed to plaintiff's decedent. As we have held above, summary judgment was properly granted in favor of OMC as there was no duty owed because plaintiff's decedent's deviation from the roadway onto OMC's property was not in the ordinary course of travel. Thus, amending the action in the fourth amended complaint to assert wilful and wanton misconduct by OMC's placement and maintenance of the concrete pillars adjacent to the roadway does not change the result that no duty was owed under the circumstances. Because OMC's motion to dismiss was under section 2—619, the circuit court could properly consider the affidavits and depositions filed in the summary judgment proceeding and was not limited to the pleading attacked. Although the better practice may have been for OMC to file

another summary judgment motion attaching the affidavits and depositions originally presented to the court in the first summary judgment motion on the third amended complaint, it is obvious that the court and the parties were considering the duty question based upon the materials submitted at the prior summary judgment proceeding together with the most recently filed amended pleadings, and no prejudice resulted. The amended complaint against OMC was properly dismissed as no duty was owed to plaintiff's decedent.

The judgment of the circuit court is affirmed.

Affirmed.

DUNN, J., concurs.

JUSTICE McLAREN, specially concurring:

I concur with the court's opinion as to all matters other than its opinion on counts III and IV.

Contrary to the trial court's determination and the majority opinion, I believe a duty existed as set forth in the Restatement (Second) of Torts §368 (1965). However, I believe that, as a matter of law, there was no breach of duty based upon the established facts in this case.

Just as the majority, I believe the facts establish an unreasonably foreseeable deviation from the highway in the ordinary course of travel. However, I believe plaintiff could not and did not present sufficient material facts to establish liability.

The general rule regarding the duty owed by an owner or occupant of land to the occupant of a motor vehicle to protect against injury resulting from the vehicle leaving the roadway and coming in contact with an artificial condition adjacent to the roadway is:

"A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

(a) are traveling on the highway, or

(b) foreseeably deviate from it in the ordinary course of travel." (Restatement (Second) of Torts §368 (1965).)

(See *Hoffman v. Vernon Township* (1981), 97 Ill. App. 3d 721, 725.) For a duty to exist, the person to whom that duty is owed must fore-

seeably deviate from the roadway in the ordinary course of travel. (*Kavanaugh v. Midwest Club, Inc.* (1987), 164 Ill. App. 3d 213, 218, citing *Boylan v. Martindale* (1982), 103 Ill. App. 3d 335, 344.) The condition of the roadway must be such that a vehicle is likely to deviate from it in the ordinary course of travel and come in contact with the artificial condition. (*Kavanaugh*, 164 Ill. App. 3d at 218, citing *Boylan*, 103 Ill. App. 3d at 345.) To determine foreseeability, "we consider what was apparent to the defendant at the time of his now complained of conduct, not what may appear through exercise of hindsight." *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 376.

In the instant case, OMC argues that a duty pursuant to section 368 of the Restatement (Second) of Torts did not arise because Moraites was not exercising reasonable care while travelling upon the highway and travellers will not foreseeably deviate from the highway in the ordinary course of travel. OMC's first contention is misplaced. The fact that a third party, Moraites, was or was not exercising reasonable care has no bearing on whether a duty is owed to plaintiff's decedent under section 368. The record and briefs are replete with facts pertaining to the conduct of Moraites. There is no evidence that plaintiff's decedent was not in the exercise of reasonable care while traveling upon the highway.

In *Kubala v. Dudlow* (1958), 17 Ill. App. 2d 463, plaintiff's decedent was killed when a car in which he was a passenger left the roadway at a sharp curve and struck a concrete abutment located on a defendant's property. The plaintiff alleged that the defendant erected and maintained a row of concrete posts at a point where the roadway made a sharp turn. The plaintiff also alleged that the defendant constructed these posts with the knowledge that they were so close to the highway that users would necessarily strike them if unintentionally deviating from the road. Additionally, the plaintiff alleged that the defendant permitted a dangerous condition to remain after actual knowledge that it had caused injuries. The plaintiff argued that by placing and maintaining these abutments on its land close to the highway without proper warning devices, the defendant exhibited willful and wanton misconduct. The court, upon reviewing the grant of the defendant's motion to dismiss and citing section 368 of the Restatement (Second) of Torts, reversed the trial court and found that a cause of action did exist under this factual setting. *Kubala*, 17 Ill. App. 2d at 469-70.

This court has also had an opportunity to consider section 368 of the Restatement (Second) of Torts in the case of *Kavanaugh* (164 Ill. App. 3d 213). In that case, the plaintiff's decedent died when the car

he was driving left the roadway and became submerged in a retention pond located on the defendant's property. The trial court found that the defendant owed no duty to the plaintiff's decedent and granted defendant's motion to dismiss. On appeal, the plaintiff contended that the defendant owed the decedent a duty of reasonable care to maintain and guard the retention pond because it was foreseeable that a motor vehicle, in its ordinary course of travel, could leave the roadway and enter the pond.

This court affirmed the trial court's order dismissing the claim, finding the complaint deficient in several respects. We stated:

> "The complaint, however, sets forth no allegations as to why the location of the retention pond involves an unreasonable risk ***. There are no allegations, for example, that the pond was located near a sharp curve in the roadway [citation] or opposite a 'T' intersection in the roadway [citation], which might make it likely that the vehicle would deviate from the roadway in the ordinary course of travel and come into contact with the pond. The bare allegation that Midwest Club happened to locate its retention pond 'in the vicinity of' this particular stretch of roadway, by itself, without an allegation of a condition peculiar to the roadway, does not create a duty to protect the occupants of vehicles which *** leaves [sic] the roadway and enters the pond.
> ***
> *** In addition to plaintiff's failure to allege any condition of the roadway that is likely to cause a vehicle to deviate therefrom *** there are no allegations of where the retention pond was in relation to 31st Street." *Kavanaugh*, 164 Ill. App. 3d at 218-19.

The case at bar is similar to *Kubala* and also contains the facts that were missing in *Kavanaugh*. In this case, there is a sharp curve in the roadway. The location of the concrete pillars is such that if a motorist travelling in either direction failed to negotiate the curve, he/she would come in contact with the pillars. In addition, it is uncontroverted that the pillars are *immediately* adjacent to the curve. A motorist would not have to veer off the roadway by more than a few feet to strike the pillars. "Distance from the highway is frequently decisive, since those who deviate in any normal manner in the ordinary course of travel cannot reasonably be expected to stray very far." (Restatement (Second) of Torts §368, comment *h* (1965).) I am of the opinion that this case is similar to *Kubala*, in which a cause of action was found to exist, and also supplies the facts that were missing in

*Kavanaugh.* I find that a duty to plaintiff's decedent did attach pursuant to section 368 of the Restatement, and the trial court erred in holding otherwise.

The main difference between my opinion and the majority's opinion is that their opinion ascribes the negligent acts of the driver to the plaintiff. No case has been found or cited which considers the existence or nonexistence of a duty based upon the acts of a third party, absent some knowledge or activity of plaintiff that could be deemed negligent. Rather than protecting OMC's fence with concrete abutments two feet from the roadway, the fence should have been moved back or some less hazardous alternative taken.

Since I determine that there was a duty which was not breached, I specially concur.