PATRICIA A. VOSBEIN, as Adm'r of the Estate of Shaun T. Parrott, *et al.*, Plaintiffs-Appellants, v. E.T. SIMONDS CONSTRUCTION COMPANY, INC., Defendant-Appellee.

Fifth District   No. 5—97—0220

Opinion filed April 8, 1998.

WELCH, P.J., dissenting.

John D. Mitchell, Jr., of Mitchell Law Office, of Zeigler, for appellant Patricia A. Vosbein.

Brian McGovern, of Law Office of Terry Sharp, of Mt. Vernon, for appellant Stephen Willis.

James B. Bleyer, of Bleyer & Bleyer, of Marion, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Shaun T. Parrott was killed and Stephen Willis was severely injured when the light pickup truck that Willis was driving and in which Parrott was a passenger left the roadway of Interstate 57, entered the grassy median between the southbound and northbound lanes of the interstate, and struck cement barrier segments being stored there by defendant, E.T. Simonds Construction Co., Inc. (Simonds). Simonds had been engaged in rebuilding a bridge near the accident site. Plaintiff argues that the cement barrier segments were no longer being used at the construction site but had been placed in the median of the interstate for storage. The barrier segments were not parallel with the interstate but were at an angle almost perpendicular to the interstate. As Willis was driving southbound on Interstate 57, he lost control of his vehicle for reasons unknown, drove into the grassy median between the interstate lanes, and struck the barrier segments, which were approximately 27 feet from the lane of traffic that Willis had left.

In separate complaints filed in the circuit court of Franklin County, Patricia A. Vosbein, as administrator of the estate of Shaun T. Parrott, brought suit against Simonds for the death of her decedent, and Stephen Willis brought suit against Simonds for his injuries. The cases were consolidated by the circuit court. Both complaints alleged negligence by Simonds and claimed that Simonds had breached its duty to exercise reasonable care toward the plaintiffs.

Simonds filed a motion, pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1996)), to dismiss the complaints for failure to state a cause of action. Simonds argued that the complaints failed to allege sufficient facts to establish a legal duty owed by Simonds to the plaintiffs. The trial court agreed and, on April 4, 1997, dismissed plaintiffs' complaints with prejudice. Plaintiffs appeal. We reverse and remand.

When ruling on a motion to dismiss under section 2—619 of the Code of Civil Procedure, the trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Toombs v. City of Champaign*, 245 Ill. App. 3d 580, 583, 615 N.E.2d 50, 51 (1993). The court should grant the motion only if plaintiff can prove no set of facts that would support a cause of action. *Toombs*, 245 Ill. App. 3d at 583, 615 N.E.2d at 51. Because this process does not require the court to weigh facts or determine credibility, appellate courts do not give a trial court's judgment deference but instead review the matter *de novo*. *Toombs*, 245 Ill. App. 3d at 583, 615 N.E.2d at 51.

The single question presented for our review is whether Simonds owed a legal duty of care to plaintiffs under the circumstances of this case. The answer is yes.

■ Necessary to any recovery based on negligence is the existence of a duty to conform to a certain standard of conduct for the protection of the plaintiff. *Battisfore v. Moraites*, 186 Ill. App. 3d 180, 187-88, 541 N.E.2d 1376, 1381 (1989). Whether a duty exists is a question of law to be determined by the court, and the answer depends on whether the parties stand in such a relationship to one another that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff. *Gouge v. Central Illinois Public Service Co.*, 144 Ill. 2d 535, 542, 582 N.E.2d 108, 112 (1991).

In *Gouge*, our supreme court held that the electric utility owed no common law duty of reasonable care to ensure that if an automobile leaves the traveled portion of a roadway and strikes a utility pole, the pole will fall away from the roadway. Our supreme court pointed out that generally the liability of a utility company for injuries to a motorist resulting from a collision with a utility pole depends on whether the pole is located in or so close to the traveled portion of the highway as to constitute an obstruction dangerous to anyone properly using the highway. *Gouge*, 144 Ill. 2d at 544, 582 N.E.2d at 112-13. Our supreme court held:

> "*Because plaintiffs cannot show the cited* [Illinois Commerce Commission] *rules were intended to protect against this type of injury, we disagree with plaintiffs' contention that CIPS owed them a duty* to properly install the utility pole pursuant to Rules 261C and 282A of the National Electric Safety Code." (Emphasis added.) *Gouge*, 144 Ill. 2d at 543, 582 N.E.2d at 112.

In *Hoffman v. Vernon Township*, 97 Ill. App. 3d 721, 423 N.E.2d 519 (1981), plaintiff's automobile went out of control, left the roadway, and struck a utility pole that was located 27 feet from the centerline of the roadway and 12 to 16 feet from the easterly boundary line of the roadway. The court affirmed the grant of summary judgment in defendant's favor, noting the particular circumstances of this case:

> "There was a protective barrier, a curb, between the highway and the pole; the pole was located not immediately adjacent to the road, but some 12 to 16 feet away; there was a cautionary sign giving advance warning of a curve in the road; there was a 'STOP AHEAD' sign near the curve; there were double yellow lines dividing the two lanes going into and at the curve; there is no pleading or evidence of any prior accidents at the curve giving notice of a dangerous condition to Edison; *the pole was installed at that location with the approval of the State Department of Transportation*; and there is no evidence that the pole itself created an illusory ef-

fect." (Emphasis added.) *Hoffman*, 97 Ill. App. 3d at 726-27, 423 N.E.2d at 523.

We believe that given the facts of this case, it was reasonably foreseeable that a vehicle would leave the interstate highway and strike the concrete barrier. Our decision is not inconsistent with *Gouge* or *Hoffman*, given the circumstances alleged by the plaintiffs. Consider the following.

Why are interstate highways divided? Why are they separated by grassy medians? Why do they have paved shoulders? Because, not only is it possible, it is reasonably foreseeable that a vehicle might leave the traveled portion of the interstate and travel some distance into the grassy median.

At 65 miles per hour, a vehicle is traveling at approximately 95 feet per second at a 30-degree angle. At that speed, a vehicle could leave the highway, cross the inner shoulder, and drive 27 feet into the median in less than one second, less than the time it takes to look down to change a radio station. The speed of modern cars, coupled with the volume of traffic on the interstate highway system, furnishes the reason for the division of the highways and the grassy median between the lanes. The designers of the system foresaw the likelihood of cars occasionally leaving the travelled lanes, and they built into the system a margin of safety for driver error.

That margin of safety is sometimes reduced and occasionally eliminated. We are all familiar with portions of the interstate system that are not separated by grassy medians. Some lose the safety factor of separations because of topographic considerations; mountain passes may not allow the lanes to be separated. Some lose the separation because of economic considerations; urban real estate may be too expensive to allow for it. But in each of these examples there was either a necessity to eliminate the safety factor, as in the case of the mountain pass, or a balanced consideration of alternatives, as in the case of exorbitant costs for urban real estate as compared to a reduction of a known hazard, that led to the decision to reduce the level of safety afforded the men, the women, and their families who travel the interstate system.

The balancing of considerations is, at least as of this time, almost completely lacking in this case, and it is the balancing process that allows the imposition of a duty under these facts as alleged in the complaint. Obviously, the alleged facts must be taken as true for purposes of a section 2—619 motion (735 ILCS 5/2—619 (West 1996)). What are those facts? Plaintiffs allege:

"7. *** Such placement of barrier materials within the median strip of an Interstate Highway is contrary to good, reasonable and

prudent engineering practices as are outlined in 'A Policy on Design Standards, Interstate System' as prepared by the American Association of State Highway Officials. This policy calls for *an unobstructed median*, in rural areas with flat and rolling terrain, with a width of at least thirty-six feet (36'), *and* that *if obstructions* within that width *are necessary*, then *the obstruction shall be protected* by guardrails or other energy absorbing devices." (Emphasis added.)

Defendant's section 2—619 motion admits that paragraph 7's statement of the American Association of State Highway Officials policy is true for purposes of this appeal. The statement of the policy certainly appears to be a recognition of responsibility by some of those involved most intimately with highways. The policy's call for "unobstructed medians" is reinforced by its exception that allows protections by guardrails for obstructions within the median but only if those obstructions are "necessary."

Thus, unlike *Gouge*, in which plaintiffs were unable to show that the Illinois Commerce Commission's rules were intended to protect against the type of injury alleged, and also unlike *Hoffman*, in which the pole involved was installed with the approval of the State Department of Transportation, in this case, the plaintiff has pled that the barriers were placed in violation of similar regulations.

There is no indication that it was necessary to store these barriers in the median. Plaintiff has argued that construction was complete at the time of the accident. If this is so, the concrete barriers were simply being stored in the median and served no public benefit. A crane is needed to move the concrete barriers. Instead of placing the barriers on a flatbed trailer and moving them to an off-road storage site, where the foreseeability of injury from interstate vehicular traffic was nonexistent, the defendant is charged with placing the barriers in the median for storage purposes.

If we assume that construction was not complete, we then examine paragraph 8 of the complaint.

"8. At that time, the Illinois Department of Transportation had in force policies and guidelines relative to placement of maintenance and construction equipment and materials within the median areas on interstate highways for the purpose of protecting the traveling public of which the decedent was a member. These requirements were included in construction contracts to all contractors performing construction upon interstate highways of the State of Illinois, including Defendant, E.T. Simonds Construction Co., Inc.[,] [t]hereby making it the duty of the Defendant to comply with the requirements in order to prevent accidents such as the one complained of."

The Illinois Department of Transportation guidelines provide, "The barrier shall be removed by the Contractor and transported to an area behind [*sic*] guardrail in the median to be stored for use on a future contract." FAI Route 57, § 28(5B—1, 5B, 2B, 1B)D; 28(5VB, 3VB—1)I, Franklin County, § 9—616D4—88.

Therefore, as noted in paragraph 7, the American Association of State Highway Officials prohibits obstructing the median in general and requires guardrails if there is a necessary obstruction. The Illinois Department of Transportation provides that barriers in the median shall be protected by guardrails. Thus, both national and state authorities prohibit the conduct engaged in by defendants. And the conduct is prohibited presumably because it is foreseeable that drivers will enter the medians.

Foreseeability, of course, is not the only consideration in a judge's decision to impose a duty in a particular case. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 526, 513 N.E.2d 387, 396 (1987). Other considerations that are relevant to the existence of a duty include the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden upon the defendant. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 151, 554 N.E.2d 223, 226-27 (1990); *Harnischfeger Corp. v. Gleason Crane Rentals, Inc.*, 223 Ill. App. 3d 444, 585 N.E.2d 166 (1991).

■ Under the facts of this case, the likelihood of injury is apparent. Shaun Parrott was killed and Stephen Willis was severely injured. But even before this accident there would be little room for argument that great injury is likely if one drives a vehicle at any speed near the speed limit of 65 miles per hour into concrete barrier segments. Further, under the circumstances of this case, both the magnitude of the burden of guarding against injury and the consequences of placing that burden upon the defendant are slight. This hazard could have been eliminated completely by moving the barriers from the median, a move that obviously had to be done anyway if the construction project was complete. If the construction was complete, the burden on the defendant would have been minimal. If the construction had not been completed, the burden on the defendant to store the barriers at a spot less exposed to a heavily traveled, high-speed highway would have been greater, but when it is balanced against the likelihood of injury and the foreseeable, serious nature of the injury, it is appropriate to impose a duty of reasonable care upon the defendant to either eliminate the hazard or appropriately guard against it.

Although areas off the highway are not ordinarily traveled, there may be certain circumstances, like those at bar, where the defendant

may reasonably be expected to anticipate the danger of storing construction materials in the median of an interstate highway. The defendant's duty of reasonable care extends to a risk that a traveler would collide with the concrete barriers left in the median. The trier of fact may consider whether the plaintiffs were guilty of negligence contributing in whole or in part to their injury, and it may adjust the verdict accordingly.

Reversed and remanded.

MAAG, J., concurs.

PRESIDING JUSTICE WELCH, dissenting:
The majority characterizes the single question presented for our review as whether Simonds owed a legal duty of care to plaintiffs. More precisely, the question is whether Simonds owes a duty of care to the occupants of a vehicle that leaves a straight and level interstate highway at a point where there is no access or exit road, crosses over the shoulder, enters the grassy median, and strikes a concrete barrier placed 27 feet from the driving lane. I agree with the trial court that the answer to this question is no.

Necessary to any recovery based on negligence is the existence of a duty to conform to a certain standard of conduct for the protection of the plaintiff. *Battisfore v. Moraites*, 186 Ill. App. 3d 180, 187-88 (1989). Whether a duty exists is a question of law to be determined by the court, and the answer depends on whether the parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff. *Gouge v. Central Illinois Public Service Co.*, 144 Ill. 2d 535, 542 (1991).

While the existence of a legal duty is ordinarily considered in terms of foreseeability, the duty is not bottomed on foreseeability alone. *Hoffman v. Vernon Township*, 97 Ill. App. 3d 721, 724 (1981). Other factors to be taken into consideration, besides the foreseeability of the possible harm, are the likelihood of injury from the existence of a condition, the magnitude of guarding against it, and the consequences of placing the burden upon the defendant. *Hoffman*, 97 Ill. App. 3d at 724. In terms of foreseeability, the court will consider whether the risk of harm to the plaintiff was *reasonably foreseeable*. *Gouge*, 144 Ill. 2d at 542.

As our supreme court stated in *Cunis v. Brennan*, 56 Ill. 2d 372, 376 (1974), "The creation of a legal duty requires more than a mere possibility of occurrence." Quoting from Prosser (W. Prosser, Torts

§ 31 at 146 (4th ed. 1971)), our supreme court stated, " 'No man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded.' " *Cunis*, 56 Ill. 2d at 376.

I agree with the trial court in the case at bar that Simonds owed no common law duty to protect plaintiffs from the harm they suffered. This case is remarkably similar to *Gouge v. Central Illinois Public Service Co.*, 144 Ill. 2d 535 (1991), in which our supreme court held that the electric utility owed no common law duty of reasonable care to ensure that if an automobile leaves the traveled portion of a roadway and strikes a utility pole, the pole will fall away from the roadway. Our supreme court pointed out that generally the liability of a utility company for injuries to a motorist resulting from a collision with a utility pole depends on whether the pole is located in or so close to the traveled portion of the highway as to constitute an obstruction dangerous to anyone properly using the highway. *Gouge*, 144 Ill. 2d at 544. Our supreme court held that utility companies owe no duty to motorists who collide with utility poles unless it is reasonably foreseeable that the vehicles would leave the roadway in the ordinary course of travel and strike the utility poles. In *Gouge*, the utility pole was located 15 feet from the roadway. No facts were alleged that would indicate that it was reasonably foreseeable that plaintiff would deviate from the roadway as a normal incident of travel and strike the utility pole.

Similarly, in *Hoffman v. Vernon Township*, 97 Ill. App. 3d 721 (1981), plaintiff's automobile went out of control, left the roadway, and struck a utility pole that was located 27 feet from the centerline of the roadway and 12 to 16 feet from the easterly boundary line of the roadway. The court found that it was not reasonably foreseeable by defendant that plaintiff would deviate from the road as he did as a normal incident of travel. *Hoffman*, 97 Ill. App. 3d at 726. "While it is foreseeable that any driver could, for any number of reasons, leave the paved highway surface[,] it must be reasonably foreseeable to create a duty. [Citation.] For a duty to attach[,] the person must foreseeably deviate in the *ordinary course of travel* ***." (Emphasis in original.) *Hoffman*, 97 Ill. App. 3d at 726. See also *Boylan v. Martindale*, 103 Ill. App. 3d 335 (1982).

I do not believe that it was reasonably foreseeable by defendant that plaintiffs' vehicle would leave the travelled portion of the interstate where there is no access or exit road and travel 27 feet into the grassy median in the ordinary course of travel or as a normal incident of travel. While it is possible, and even foreseeable, that a vehicle

might so leave the highway, I do not believe that it is *reasonably* foreseeable that a vehicle will do so in the normal course of travel.

Nor is section 368 of the Restatement (Second) of Torts of any assistance to plaintiff. That section provides:

> "A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition[,] while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
>
> (a) are traveling on the highway[ ] or
>
> (b) foreseeably deviate from it in the ordinary course of travel."

Restatement (Second) of Torts § 368, at 268 (1965). For a duty to arise under section 368, the person to whom it is owed must foreseeably deviate from the roadway in the ordinary course of travel, and the distinction is not one between inadvertent and intentional deviations, but between those which are normal incidents of travel and those which are not. *Swope v. Northern Illinois Gas Co.*, 251 Ill. App. 3d 850, 854 (1993).

Again, I believe that deviating from the interstate highway where there is no access or exit road, entering the grassy median between the interstate lanes, and traveling 27 feet therein is not a normal incident of travel and is not reasonably foreseeable by defendant. It is simply not reasonably foreseeable that, in the ordinary course of travel, a vehicle will deviate from the highway to such an extent as in the case at bar. See also *Battisfore v. Moraites*, 186 Ill. App. 3d 180 (1989).

Whether a legal duty exists is a question of law and is determined by reference to whether the parties stood in such a relationship to each other that *the law* imposes an obligation on one to act for the protection of the other. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 238 (1996). In my opinion, plaintiffs here have failed to allege such a relationship between plaintiffs and defendant that the law imposes a duty on defendant to act for the protection of plaintiffs. Industry standards, cited by the majority, while evidence of a standard of care, do not create such a relationship.

In my opinion, plaintiffs have failed to allege a legal duty of care owed by defendant to plaintiffs by virtue of statute, contract, or common law. Accordingly, I dissent.