DEANNA SWOPE, Plaintiff-Appellant, v. NORTHERN ILLINOIS GAS COMPANY *et al.*, Defendants-Appellees.

Third District   No. 3—93—0015

Opinion filed November 2, 1993.

Louis E. Olivero, of Louis E. Olivero & Associates, of Peru, for appellant.

E. Kent Ayers and Dinah Lennon Archambeault, both of Spesia & Ayers, of Joliet, for appellee Northern Illinois Gas Company.

JUSTICE SLATER delivered the opinion of the court:

Plaintiff Deanna Swope was severely injured when the vehicle in which she was riding went into a ditch and struck an embankment. Plaintiff filed a complaint against the Illinois Department of Transportation (the Department) and Northern Illinois Gas Company (Northern), which had constructed the embankment as part of an access road. The claim against the Department was dismissed for lack of jurisdiction and is not at issue here. The trial court granted defendant Northern's motion for summary judgment and plaintiff appeals. We affirm.

On October 14, 1989, plaintiff was a passenger in a pickup truck driven by Gene Pikula. At approximately 3:15 a.m., Pikula and plaintiff were traveling north on Illinois Route 251 when, according to Pikula, a deer suddenly ran onto the road and he swerved into a ditch to avoid it. According to the deposition testimony of State Trooper Brian Waitkus, the truck traveled approximately 375 feet in the ditch, struck the embankment, and then rolled over several times, traveling an additional 141 feet before coming to a rest. According to Pikula, however, his vehicle was only 10 feet from the embankment when he drove off the road and into the ditch. Plaintiff suffered severe injuries, including a fractured spine. Plaintiff's complaint alleged that defendant owed a duty of ordinary care "for the safety of the general public traveling along Illinois Route 251" and that defendant was negligent in that it:

"(a) Constructed, installed and maintained an access driveway and embankment without obtaining the requisite permit from [the Illinois Department of Transportation].

(b) Constructed, installed and maintained a commercial access driveway and embankment without meeting the requirements of such a driveway as required by [the Illinois Department of Transportation].

(c) Constructed, installed and maintained a commercial driveway and embankment in a location where defendant knew or in the exercise of reasonable care should have known that they would obstruct public travel.

(d) Failed to maintain the commercial access driveway and embankment with ordinary and reasonable care for the safety of the public.

(e) Failed to place barricades, guardrails, barriers, warnings, illuminated lamps, signals or other safeguards at said place to protect or warn the traveling public.

(f) Failed to place delineators and reflectors along the outer edge of said commercial access driveway and embankment.

(g) Created a dangerous condition or obstruction in or near a public roadway which was reasonably calculated to endanger the traveling public in its lawful use of the roadway.

(h) Created a nuisance, by virtue of its leaving the embankment unprotected, which nuisance endangered public travel at the location described above."

The trial court granted the defendant's motion for summary judgment, finding that defendant owed no duty to plaintiff. Plaintiff contends that landowners who create artificial conditions on their property near a public highway owe a duty to those who foreseeably deviate from the ordinary course of travel. Plaintiff also maintains that a duty arises from section 9—113 of the Illinois Highway Code (Ill. Rev. Stat. 1989, ch. 121, par. 9—113), which requires a utility company to obtain permission from the State highway authority before placing or constructing drains or other equipment upon or along a highway.

Summary judgment should be granted where the pleadings, depositions and affidavits reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (*Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 583 N.E.2d 538; Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) In a negligence action, the plaintiff must set out sufficient facts to establish the existence of a duty, a breach of that duty and an injury proximately caused by that breach. (*Vesey*, 145 Ill. 2d 404, 583 N.E.2d 538; *Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 566 N.E.2d 1365.) Whether a duty exists is a question of law and depends upon whether there is a relationship between the parties which the law recognizes as imposing an obligation on the defendant to act reasonably for the protection of the plaintiff. (*Vesey*, 145 Ill. 2d 404, 583 N.E.2d 538; *Gouge v. Central Illinois Public Service Co.* (1991), 144 Ill. 2d 535, 582 N.E.2d 108.) Relevant factors in determining the existence of a duty include the foreseeability of injury, the likelihood of injury, the magnitude of the burden of guarding against the injury, the consequences of placing that burden on the defendant and the possible seriousness of the injury. (*Gouge*, 144 Ill. 2d 535, 582 N.E.2d 108; *Deibert v. Bauer Brothers Construction Co.* (1990), 141 Ill. 2d 430, 566 N.E.2d 239.) Absent a showing from which the court can infer the existence of a duty,

summary judgment in favor of the defendant is proper. *Vesey*, 145 Ill. 2d 404, 583 N.E.2d 538; *Battisfore v. Moraites* (1989), 186 Ill. App. 3d 180, 541 N.E.2d 1376.

■ When considering the duty owed by a possessor of land who creates an artificial condition near a highway, Illinois courts have frequently cited to section 368 of the Restatement (Second) of Torts, which states:

> "A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
>
> (a) are traveling on the highway, or
>
> (b) foreseeably deviate from it in the ordinary course of travel." Restatement (Second) of Torts §368 (1965).

See *Gouge*, 144 Ill. 2d 535, 582 N.E.2d 108; *Boylan v. Martindale* (1982), 103 Ill. App. 3d 335, 431 N.E.2d 62; *Hoffman v. Vernon Township* (1981), 97 Ill. App. 3d 721, 423 N.E.2d 519.

For a duty to arise under section 368, the person to whom it is owed must foreseeably deviate from the roadway in the ordinary course of travel, and the distinction is " 'not one between inadvertent and intentional deviations, but between those which are normal incidents of travel and those which are not.' " (*Battisfore*, 186 Ill. App. 3d at 189, 541 N.E.2d at 1382, quoting Restatement (Second) of Torts §368, Comment *g*, at 270 (1965).) Plaintiff maintains that it is reasonably foreseeable that a person traveling on a highway will encounter a deer and drive into a drainage ditch to avoid a collision. Plaintiff notes the deposition testimony of Trooper Waitkus that it would not be unusual for a deer to be present in the area of the accident and that there have been numerous accidents involving deer on Interstate 39, some two or three miles east of the accident site.

In *DiBenedetto v. Flora Township* (1992), 153 Ill. 2d 66, 605 N.E.2d 571, plaintiff's decedent was killed when he drove his car across the oncoming lane of traffic, crossed over a five- to seven-foot-wide shoulder area and landed in a drainage ditch. The trial court granted defendant's motion to dismiss, finding that defendant owed no duty to plaintiff. In affirming the trial court, our supreme court stated:

> "The gist of the complaint in this case was that the ditch along the road was not safe to be driven in. Few would dispute

that allegation. The question is, Does the defendant township have a duty to the motoring public to make its drainage ditches which run parallel to the traveled way to be safe for vehicular traffic? We hold not. There is no claim here that the traveled portion of the road, including the shoulder, was anything but safe. The drainage ditch was there for the purpose of receiving surface water and thereby protecting the traveled way from flooding. It was not designed to carry vehicular traffic. The right-of-way had three component parts, namely, the traveled way, the shoulder and the drainage ditch. Each of the parts was fulfilling its intended function. What happened in this case was that decedent, for whatever reason, lost control of his car, drove across an oncoming lane of the roadway, on across the shoulder and into the ditch where his car overturned and he was killed.

It is axiomatic that a driver who leaves the traveled way and continues with his automobile across country is bound to strike something sooner or later. In this case, as there were no oncoming vehicles when he crossed over the opposite lane, the driver plunged into a roadside ditch and tipped over. Had the ditch not been there, the car would have likely struck something else, be it a utility pole, a fence, a tree or whatever. When an out of control automobile is brought to an abrupt stop by an immovable object, damage, injury or even death may be the result. That is what happened in this case. ***

Drainage ditches along streets and highways are both commonplace and necessary. People are not expected to drive in them and the public cannot be an insurer of those who do. Although there is a paucity of cases on this issue, we interpret that lack to the fact that the conclusion is obvious and that the opposite result would be contrary to normal expectations and experience in the affairs of life." *DiBenedetto*, 153 Ill. 2d at 70-71, 605 N.E.2d at 573.

Later, the *DiBenedetto* court focused on the issue of foreseeability:

"Foreseeability is but one of the factors to be weighed in determining the existence of a duty. Even if an accident is foreseeable, the resulting burdens and consequences must also be considered before a legal duty will be recognized. While this accident was foreseeable to the extent that, in retrospect, all accidents are foreseeable, this is not sufficient to enlarge the township's duty. It is, of course, both foreseeable and commonplace

that cars will occasionally run into ditches. The instant case, however, is not the type of accident one would expect to occur under normal driving circumstances." *DiBenedetto*, 153 Ill. 2d at 72, 605 N.E.2d at 574.

In this case, as in *DiBenedetto*, the gist of plaintiff's complaint is that the ditch along the road was not safe to be driven in. In *DiBenedetto*, the allegations of negligence were the slope and the depth of the ditch and its close proximity to the road. Here, the alleged negligence consisted of defendant's obstruction of public travel and its failure to properly construct, maintain and warn of this obstruction. However, as pointed out in *DiBenedetto*, "[d]rainage ditches along streets and highways are both commonplace and necessary. People are not expected to drive in them." (*DiBenedetto*, 153 Ill. 2d at 71, 605 N.E.2d at 573.) Similarly, access roads which cross drainage ditches are commonplace and necessary, and people are not expected to collide with them in the ordinary course of travel. In other words, where there is no duty to make drainage ditches safe for public travel, there is no duty to keep those same ditches free from the type of obstruction at issue here. While we recognize that, unlike this case, the defendant in *DiBenedetto* was a public entity, we believe that the court's analysis of the duty of care owed to motorists traveling in roadside ditches is broadly applicable. We also believe that our decision is consistent with the holdings of other cases in which no duty has been found to exist despite the existence of artificial conditions near roadways. See *Hutchings v. Bauer* (1992), 149 Ill. 2d 568, 599 N.E.2d 934 (barrier made of posts and logs located 15 to 20 feet from road); *Gouge*, 144 Ill. 2d 535, 582 N.E.2d 108 (utility pole approximately 15 feet from paved surface); *Battisfore*, 186 Ill. App. 3d 180, 541 N.E.2d 1376 (cement pillar two feet from roadway); *Hoffman*, 97 Ill. App. 3d 721, 423 N.E.2d 519 (utility pole located 12 to 15 feet from road); *West v. Faurbo* (1978), 66 Ill. App. 3d 815, 384 N.E.2d 457 (concrete block four or five feet from sidewalk).

Furthermore, although we agree with plaintiff that it is foreseeable that one may encounter a deer and drive into a ditch, "[e]ven if an accident is foreseeable, the resulting burdens and consequences must also be considered before a legal duty will be recognized" (*DiBenedetto*, 153 Ill. 2d at 72, 605 N.E.2d at 574). We find that it would be unduly burdensome to require landowners to somehow construct and maintain access roads in such a manner that persons suddenly leaving the roadway will be protected from the harm of colliding with the road or embankment. Of course, our finding that no duty exists under the facts presented here does not provide complete immunity to

landowners who are negligent in the construction and maintenance of access roads. For example, if a person was injured while changing a flat tire on an access road because the road was negligently constructed, a duty might be imposed. However, "[n]o duty ever found to exist in a negligence case is unlimited in its application. It cannot be applied to protect a plaintiff under any and all circumstances." (*Lemings v. Collinsville School District Number Ten* (1983), 118 Ill. App. 3d 363, 378, 454 N.E.2d 1139, 1148 (Jones, J., specially concurring).) We hold that, under the circumstances presented here, defendant did not owe a duty to plaintiff.

Plaintiff also contends that a duty of care arises from section 9—113 of the Illinois Highway Code, which provides in part:

> "§9—113. (a) No ditches, drains, track, rails, poles, wires, pipe line or other equipment of any public utility company, municipal corporation or other public or private corporation, association or person shall be located, placed or constructed upon, under or along any highway, or upon any township or district road, without first obtaining the written consent of the appropriate highway authority as hereinafter provided for in this Section." (Ill. Rev. Stat. 1989, ch. 121, par. 9—113(a).)

Plaintiff relies on *Reith v. General Telephone Co.* (1974), 22 Ill. App. 3d 337, 317 N.E.2d 369, in which the plaintiff fell into an excavation site in which underground cables were being installed. The trial court granted summary judgment to the defendant telephone company on the grounds that the construction company hired by defendant to perform the work was an independent contractor. The appellate court reversed, finding that the terms of the contract between the defendant and the construction company did not establish independent contractor status as a matter of law. As an additional ground for reversal, the court noted that section 9—113 required the defendant to obtain permission from State and local authorities prior to installing the cables. The court found that a nondelegable duty of care arises when an individual or corporation acts under a franchise or license granted by public authority. The court concluded:

> "Furthermore, the implied conditions of this license would reasonably include the duty of a licensee to keep the construction site along a public right-of-way safe for passers-by. The defendant telephone company had the duty to install the lines or cable in such a manner as to avoid interfering with the plaintiff's right to a safe use of the streets and sidewalks. Although the defendant could delegate the actual work of installation, it is clear that the duty or responsibility to keep the public

ways safe was non-delegable since it was a condition of the license held by the defendant." *Reith*, 22 Ill. App. 3d at 343.

■ We find *Reith* to be inapposite to the case at bar. The issue in *Reith* was whether the defendant could escape liability by delegating its duty of care to an independent contractor, not whether a duty in fact existed. Moreover, the underlying duty referred to in *Reith* was that of keeping a *construction site* along a public right-of-way safe for passers-by. Clearly no construction was underway in this case, as the record indicates that the permit for construction of defendant's access road was issued in 1958. Furthermore, we find that any duty arising from section 9—113 of the Illinois Highway Code does not include a duty to protect the plaintiff from the type of injury suffered here. To impose liability for violation of a statute or rule designed to protect human life or property, a plaintiff must show that the violation proximately caused the injury, that plaintiff belonged to the class of persons whom the statute was designed to protect, and that the injury suffered by plaintiff was the kind of injury which the statute sought to prevent. (*Gouge*, 144 Ill. 2d 535, 582 N.E.2d 108.) Assuming that section 9—113 was designed to protect human life, and assuming that defendant's alleged violation of the statute proximately caused the injury, and further assuming that plaintiff belonged to the class of persons intended to be protected, we find that section 9—113 was not intended to prevent injuries caused by persons suddenly leaving the roadway, entering a drainage ditch and colliding with an embankment supporting an access road. A contrary interpretation is simply not supported by the language of section 9—113.

■ Finally, we find that summary judgment is not precluded merely because Pikula testified that his truck left the road near the embankment, while Trooper Waitkus indicated that the vehicle traveled 375 feet in the ditch before striking the embankment. Factual issues which are not material to the essential elements of the cause of action or defense, regardless of how sharply controverted, do not warrant the denial of summary judgment. (*Boylan*, 103 Ill. App. 3d 335, 431 N.E.2d 62.) We find that the exact location where Pikula's truck entered the ditch is immaterial to the issue of whether defendant owed a duty of care to plaintiff.

For the reasons stated above, the judgment of the circuit court is affirmed.

Affirmed.

BARRY and LYTTON, JJ., concur.