EDWARD F. LARSON, Plaintiff-Appellant, v. KEVIN O'DONNELL *et al.*, Defendants-Appellees (O'Donnell and Associates, Ltd., Plaintiff; Edward Larson, Defendant).

First District (3rd Division)   No. 1—05—0489

Opinion filed September 30, 2005.

Kenneth J. Ashman, of Ashman Law Offices, L.L.C., of Chicago, for appellant.

O'Donnell & Associates, Ltd., of Schaumburg, for appellees.

JUSTICE THEIS delivered the opinion of the court:

Plaintiff, Edward F. Larson, filed an action against defendants, Kevin O'Donnell and O'Donnell & Associates, Ltd., alleging legal malpractice and breach of fiduciary duty arising out of defendants' representation of plaintiff in connection with his divorce proceedings. During the pendency of discovery, the trial court granted defendants' motion for extension of time to respond to plaintiff's requests to admit, finding good cause had been established for the delay in responding. Subsequently, the trial court granted defendants' motion for summary judgment, finding that plaintiff was estopped from bringing his cause of action. On appeal, plaintiff contends that (1) the trial court abused its discretion in finding that defendants established good cause for their failure to timely respond to plaintiff's request to admit; (2) the trial court abused its discretion in allowing defendants to be heard on a motion for summary judgment beyond the time allowed by local rule; and (3) the trial court erred in granting defendants' motion for summary judgment. For the following reasons, we affirm the judgment of the circuit court.

## BACKGROUND

### A. Underlying Litigation

By letter agreement dated November 23, 1999, plaintiff retained

defendants to represent him in connection with his divorce proceeding. At issue in the divorce proceeding, among other issues, was plaintiff's responsibility for child support and maintenance payments. Pursuant to settlement negotiations and advice from defendants, plaintiff agreed to pay 20% of his net income for child support and 10% of his net income for maintenance. Subsequently, on January 31, 2001, plaintiff became unemployed.

Thereafter, on February 13, 2001, the parties and their respective counsel appeared before the court to present the parties' marital settlement agreement for approval. The agreement with respect to child support payments provided in pertinent part as follows:

"3.1 [Plaintiff] shall pay to Nancy as and for child support the total sum of $1,032.00 per month, beginning on the first pay period immediately following the entry of judgment herein as for so long as there is a duty of child support by virtue of this agreement or any court order. The parties acknowledge that [plaintiff's] gross income in the year 2000 was $129,930 per year and that his properly calculated net income was $86,000.00 for that year; however, [plaintiff's] employment with El Camino Resources, Ltd. was terminated on January 31, 2001 and that [plaintiff's] future employment status is presently unknown. Under the circumstances, the parties acknowledge that [plaintiff] has the ability to earn a gross income of at least $90,000 per year, and with a properly calculated net income of at least $62,000 per year, upon which the parties have agreed to base child support as set forth above, and that the payment of support hereunder conforms to the 20% child support guideline under Section 505 of the Illinois Marriage and Dissolution of Marriage Act.

3.2 Further, the parties acknowledge that child support cannot be expressed exclusively as a dollar amount because all or a portion of [plaintiff's] income is uncertain as to the source, time of payment, or amount, and, therefore, in addition to the above stated dollar figure, [plaintiff] shall pay as and for child support an additional 20% of any and all net income for all sources in excess of $62,000 per year."

Similarly, the agreement with respect to maintenance was based upon the parties' acknowledgment that plaintiff was unemployed but had the ability to earn a net income of at least $62,000 per year. Based upon that amount, the parties agreed that plaintiff would be responsible to pay $517 per month in maintenance for 4½ years, and would be required to pay an additional 10% of any net income for all sources of income in excess of $62,000 per year.

At the hearing to approve the settlement, plaintiff gave the following pertinent testimony when questioned by defendant O'Donnell:

"Q. Now, you have entered into a Marital Settlement Agreement, is that correct?

A. Yes.

Q. Do you understand the terms and conditions of that Agreement?

A. Yes.

Q. Do you feel that the Agreement is fair?

A. Yes.

\* \* \*

Q. You are to pay the amount of child support in the amount of $1,032 which is based on a net income of $86,000, is that correct?

A. Yes.

Q. We have informed the court and we have informed the respondent's attorney that you are currently unemployed but you believe that is a fair approximation of what you can make, is that correct?

A. Yes.

Q. Your income will be verified and the amount of child support will be based on that 20% statutory net of whatever you are making, is that correct?

A. Yes.

\* \* \*

Q. You further agree to pay to your wife maintenance for 4¹/₂ years in the amount of $517, is that correct?

A. Yes.

Q. That's based on 10% of this theoretical net that we had previously discussed, is that correct?

A. Yes.

Q. Do you understand that amount could go up and down based on what your actual income will be when you become gainfully employed?

A. Yes.

\* \* \*

Q. Is there anything about the Agreement that you do not understand?

A. No.

\* \* \*

THE COURT: Mr. O'Donnell, what is the frequency with which the child support amount will be paid?

MR. O'DONNELL: $1,032 is based on monthly and we're going to be making those payments divided equally twice a month.

Q. Is that correct?

A. [plaintiff:] Sure."

In addition, plaintiff interjected the following testimony during the hearing when his then-wife was questioned by her counsel as follows:

"Q. You understand that at present your husband is unemployed?

A. Yes.

Q. Under this agreement we have agreed to base child support based upon a gross—his gross income figure of $90,000 per year with a net income figure of—

THE PLAINTIFF: Sixty-two.

Q. —$62,000 per year, is that correct?

A. [wife:] Yes.

Q. That's how we arrived at the child support of $1,032 a month, correct?

A. Yes."

Thereafter, the parties signed the marital settlement agreement and the trial court incorporated it into the judgment for dissolution of marriage, which was entered that day.

For a period of time after the divorce, plaintiff was unemployed and his sole source of income was in the form of unemployment insurance. Instead of the amount required under the marital settlement agreement, plaintiff made child support payments of $283.60 per month and maintenance payments of $141.80 per month, representing 20% and 10% of his *then*-net income, respectively, based upon his unemployment compensation.

On September 5, 2001, plaintiff's ex-wife filed a petition for adjudication of indirect civil contempt of court and an award of attorney fees, alleging that plaintiff had violated the child support and maintenance provisions of the marital settlement agreement. Plaintiff was initially found in contempt of court, but ultimately purged himself of the contempt by tendering the amount of purported arrearage in child support and maintenance. He was also required to pay attorney fees to his ex-wife's counsel in connection with the filing of the petition.

## B. Plaintiff's Verified Complaint

On December 26, 2002, plaintiff filed a two-count verified complaint against defendants for legal malpractice (count I) and breach of fiduciary duty (count II).[1] In count I, plaintiff alleged that defendants provided him with misinformation as to his obligations under the terms of the settlement agreement. According to plaintiff, defendants assured him that the provisions of the agreement meant merely that plaintiff would have to pay 20% of his *then*-net income for child support and 10% of his *then*-net income for maintenance, which

---

[1]Plaintiff's complaint was subsequently consolidated with defendants' previously filed complaint against plaintiff for unpaid attorney fees in connection with the underlying divorce litigation.

would be based on his unemployment compensation. He alleged that defendants' advice was inconsistent with the actual terms of the agreement, which mandated that plaintiff pay $1,032 per month for child support and $517 per month for maintenance based upon his net earning potential of $62,000.

In addition, plaintiff alleged that defendants breached their duty of care by placing their own self-interest ahead of plaintiff's interests. He specifically alleged that defendants advised plaintiff to settle on terms harmful to plaintiff's interest in order to avoid plaintiff's inability to pay attorney fees if the case had proceeded to trial. Based upon defendants' alleged misguided advice, plaintiff signed the marital settlement agreement and a judgment for dissolution of marriage was entered. Plaintiff further alleged that "[b]ut for defendants' negligence and malfeasance, plaintiff would have fared better had he gone to trial" or had he forced his ex-wife to settle on more "realistic" terms given his financial position. In count II, plaintiff alleged nearly identical facts to support his breach of fiduciary duty claim.

During the pendency of the case, there were numerous motions filed and rulings, which will be addressed more fully below. Ultimately, defendants filed a motion for summary judgment and attached the report of proceedings from the underlying case in support of their motion. They argued that plaintiff was estopped from asserting his cause of action because the record of the divorce proceeding established that plaintiff understood his obligations under the marital settlement agreement and, therefore, could not be heard in this proceeding to have taken the inconsistent position that he did not understand his obligations. The trial court granted defendants' motion for summary judgment after allowing briefing and oral argument. Plaintiff filed a timely appeal pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).

ANALYSIS

Plaintiff initially contends that the trial court abused its discretion in granting defendants an extension of time to serve their response to his requests to admit pursuant to Supreme Court Rule 216 (134 Ill. 2d R. 216). The following facts are necessary to our disposition of this issue. During the pendency of discovery, on April 24, 2003, plaintiff served defendants with a set of requests to admit facts that tracked the language of the verified complaint, along with a cover letter indicating that a response was due on May 22, 2003. Defendants filed an answer to the verified complaint on May 8, 2003. However, they did not serve their response to the requests to admit by the 28-day deadline as required by Rule 216 (134 Ill. 2d R. 216). As a

result, on June 26, 2003, plaintiff filed a motion for partial summary judgment on the issue of liability, relying on the purported judicial admissions made by defendants due to their failure to timely respond to plaintiff's requests.

Thereafter, on July 23, 2003, two months after the due date, defendants filed a motion for an extension of time to respond to plaintiff's requests to admit. Therein, they argued that the court should allow them to file a late response. Defendants provided the following reasons to grant the motion: (1) there were personnel changes in the law firm; (2) the documents containing the information requested were in storage and had to be retrieved; (3) there were over 80 requests, which required a significant amount of time; (4) the requests to admit related to central issues in the case; (5) the requests to admit sought conclusions of law; (6) plaintiff failed to comply with Supreme Court Rule 201(k) (166 Ill. 2d R. 201(k)); and (7) plaintiff had not alleged prejudice from a late response. Thereafter, on September 15, 2003, the trial court entered an order granting defendants' motion for an extension of time to respond to plaintiff's requests to admit and accepted defendants' proposed responses *instanter*.

■ Pursuant to Rule 216, a party to an action may serve another party to that action with a written request for admission of "any specified relevant fact set forth in" that request, including ultimate facts. 134 Ill. 2d R. 216(a); see *P.R.S. International, Inc. v. Shred Pax Corp.*, 184 Ill. 2d 224, 236-37, 703 N.E.2d 71, 77 (1998). The party receiving that request then has 28 days in which to deny or object to the request. 134 Ill. 2d R. 216(c). If the party fails to respond, those factual matters in the request are deemed judicial admissions, which cannot later be controverted. 134 Ill. 2d R. 216(c); *Robertson v. Sky Chefs, Inc.*, 344 Ill. App. 3d 196, 199, 799 N.E.2d 852, 856 (2003).

■ Supreme Court Rule 183 (134 Ill. 2d R. 183) provides the trial court with discretion to allow responses to be served beyond the 28-day time limit. However, that discretion does not "come into play" unless the respondent first establishes good cause for the extension. 134 Ill. 2d R. 183; *Bright v. Dicke*, 166 Ill. 2d 204, 209, 652 N.E.2d 275, 277 (1995). In establishing good cause, prejudice to the opposing party is irrelevant. *Bright*, 166 Ill. 2d at 209, 652 N.E.2d at 277. Rather, the respondent must assert some independent basis as to why his untimely response should be allowed. *Bright*, 166 Ill. 2d at 209, 652 N.E.2d at 277. We review the trial court's determination on the motion for an extension of time for an abuse of discretion. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 352, 701 N.E.2d 493, 498 (1998).

■ In the present case, there was no proper justification for

defendants' failure to respond or failure to request an extension of time until two months after the response was due. While defendants argued that personnel changes kept them from timely responding to the requests, mistake, inadvertence or attorney neglect cannot constitute the sole basis for a good-cause determination. *Glasco v. Marony*, 347 Ill. App. 3d 1069, 1073, 808 N.E.2d 1107, 1110 (2004). None of defendants' other excuses explain why they could not have filed a motion for an extension of time within the 28-day time limit. Furthermore, Rule 216(c) specifically allows for the responding party to object to the requests if they are unduly burdensome or if they seek improper conclusions of law. 134 Ill. 2d R. 216(c). Lastly, defendants' arguments that plaintiff failed to comply with Rule 201(k) and that plaintiff was not prejudiced fail to satisfy the requirement that defendants must set forth an independent basis upon which the trial court could have relied. *Bright*, 166 Ill. 2d at 209, 652 N.E.2d at 277. As we have previously held, "the rule will be strictly enforced and a party that fails to respond in compliance with the rule's requirements does so at its own peril." *Tires 'N Tracks, Inc. v. Dominic Fiordirosa Construction Co.*, 331 Ill. App. 3d 87, 92, 771 N.E.2d 612, 616 (2002). Defendants failed to establish good cause for their failure to respond or failure to request an extension of time within the 28-day time limit to allow the trial court to exercise its discretion. Therefore, the trial court erred in granting defendants' motion for an extension of time to respond to plaintiff's requests to admit.

■ Nevertheless, even considering the applicable judicial admissions, we find that the trial court ultimately did not err in granting summary judgment for defendants. Initially, we consider whether the requests were proper. Upon review of the requests to admit, we find that there are numerous requests that are based upon legal conclusions and are therefore improper. *P.R.S.*, 184 Ill. 2d at 236, 703 N.E.2d at 77. Accordingly, those statements set forth in paragraphs 66 and 69 through 80 are not admitted as they are requests to admit conclusions of law. *P.R.S.*, 184 Ill. 2d at 236, 703 N.E.2d at 77. With respect to the factual requests, we need not consider the propriety of each requested factual admission separately as we find that even if these facts are deemed admitted, defendants are entitled to summary judgment as a matter of law.

Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2004). Summary judgment is appropriate if the plaintiff cannot establish an essential element of his claim, and our

standard of review is *de novo*. *Morris v. Margulis*, 197 Ill. 2d 28, 35, 754 N.E.2d 314, 318 (2001). We may affirm the circuit court's decision on any ground in the record, regardless of whether the court relied on that ground or whether the court's reasoning was correct. *City of Chicago v. Holland*, 206 Ill. 2d 480, 492, 795 N.E.2d 240, 247-48 (2003).

■ To prevail on a legal malpractice claim, a plaintiff must prove (1) the existence of an attorney-client relationship; (2) a duty arising from that relationship; (3) a proximate causal relationship between the breach of duty and damages sustained; and (4) actual damages. *Fox v. Berks*, 334 Ill. App. 3d 815, 817, 778 N.E.2d 1141, 1142 (2002). Thus, a plaintiff must demonstrate that, "but for" the attorney's negligence, he would not have suffered the alleged injury. *Kehoe v. Saltarelli*, 337 Ill. App. 3d 669, 676, 786 N.E.2d 605, 612 (2003).

■ Here, plaintiff's theory of his case is predicated on the assertion that he did not understand his obligations under the marital settlement agreement because his counsel misinformed him and had counsel correctly advised him, he would not have been damaged. Even assuming that defendants misinformed plaintiff as to his obligations with respect to child support and maintenance under the terms of the marital settlement agreement, plaintiff cannot establish that "but for" defendants' negligence, he would not have been damaged. The record in the divorce proceedings conclusively establishes that despite defendants' judicial admissions, plaintiff understood his obligations.

Plaintiff acknowledged on the record that he was obligated to pay $1,032 every month in child support and $517 in maintenance for a specific term. Therefore, when he paid a lesser amount, he knew that was not what he had agreed to pay. Indeed, plaintiff even interjected his knowledge at the hearing during his wife's testimony that the amount of his obligation was based upon his net earning potential of $62,000 and not based on his unemployment compensation as he now argues. Accordingly, plaintiff cannot establish that his counsel's erroneous advice caused him damages, and defendants are entitled to summary judgment as a matter of law as to count I.

■ With respect to count II, plaintiff has failed to specifically address the court's ruling in relation to this count and has therefore waived review of it on appeal. 188 Ill. 2d R. 341(e)(7). Nevertheless, where a breach of fiduciary duty claim is based on the same operative facts as a legal malpractice claim and results in the same injury, the latter claim should be dismissed as duplicative. *Fabricare Equipment Credit Corp. v. Bell, Boyd & Lloyd*, 328 Ill. App. 3d 784, 791, 767 N.E.2d 470, 476 (2002). Here, upon review of the complaint, we find that the breach of fiduciary duty claim is virtually identical to the negligence claim in that it alleges the same operative facts and the

same resulting injury. Therefore, summary judgment in favor of defendants was proper as to count II.

■ Moreover, we agree with the trial court's ruling that plaintiff is judicially estopped from maintaining his causes of action for legal malpractice and breach of fiduciary duty. The doctrine of judicial estoppel provides that a party who assumes a particular position in a legal proceeding is estopped from assuming a contrary position in a subsequent legal proceeding. *Barack Ferrazzano Kirschbaum Perlman & Nagelberg v. Loffredi*, 342 Ill. App. 3d 453, 460, 795 N.E.2d 779, 784 (2003). The five elements necessary for the application of the doctrine include the following: (1) the party to be estopped must have taken two positions; (2) that are factually inconsistent; (3) in a separate judicial or quasi-judicial administrative proceeding; (4) intending the trier of fact to accept the truth of the facts alleged; and (5) have succeeded in the first proceeding and received some benefit from it. *Barack Ferrazzano Kirschbaum Perlman & Nagelberg*, 342 Ill. App. 3d at 460, 795 N.E.2d at 784-85.

Plaintiff argues that he has not taken inconsistent factual positions because he merely answered "yes" to his counsel's questions and did not really understand the terms of the agreement. Additionally, he argues that his understanding of the terms of the agreement was merely an opinion and, therefore, not subject to principles of estoppel. As we stated previously, despite plaintiff's contentions, the record from the divorce proceeding establishes the conclusive fact that plaintiff understood his obligations under the terms of the marital settlement agreement. He cannot now testify that at that proceeding, he did not understand those terms. He knew when he signed the agreement that he had an obligation to pay a specific dollar amount in child support and maintenance and that it was based upon, as he himself interjected, his potential net income of $62,000. Thus, he is judicially estopped from attempting to create a question of fact regarding his "actual" understanding for purposes of summary judgment by now contradicting his previous position. For all of the foregoing reasons, the trial court properly granted summary judgment in favor of defendants on all counts.

■ Lastly, we reject plaintiff's contention that the trial court erred in allowing defendants' motion for summary judgment to be heard because it violated Cook County Rule 2.1(f) (Cook Co. Ct. R. 2.1(f) (eff. April 23, 1992)). Rule 2.1(f) provides in pertinent part that all motions for summary judgment must be filed and noticed for hearing such that the motion comes before the court for initial presentation and entry of a briefing schedule not later than 45 days before the trial date. Cook Co. Ct. R. 2.1(f) (eff. April 23, 1992).

The timing of Rule 2.1(f) is triggered by a trial date. Defendants filed their motion on September 8, 2004, and noticed the motion for hearing on September 30, 2004, at which time the court entered a briefing schedule. There is nothing in the record establishing that at the time defendants filed and noticed their motion for hearing, a trial date had been set by the court.

The record reflects that on September 19, 2004, the case was to be automatically released from the motion calendar into the "Black Line Pool" of cases. According to paragraph 1.2(a) of General Administrative Order 03—1 of the Law Division (Cook Co. Ct. Adm. Order 03—1 (eff. March 20, 2004)), "[a]s cases enter the Black Line Trial Call Pool, they will be given the next available sequence number and will begin to travel up towards the Black Line for Trial Assignment." The progression toward the "Black Line" may be impacted by numerous factors, including "a determination that the case needs to be placed back in sequence thereby allowing additional time before reaching the Black Line Trial Call." Cook Co. Ct. Adm. Order 03—1 (eff. March 20, 2004). Plaintiff has not established that by September 30, 2004, the case had a trial date.

Furthermore, paragraph 1.5 of General Administrative Order 03—1 provides that motion practice for cases that have entered the "Black Line Trial Call Pool" "shall remain before the originally assigned Master Calendar Motion Judge who *shall hear and complete* noticed motions prior to the case being placed above the Black Line for immediate Trial Assignment." (Emphasis added.) Cook Co. Ct. Adm. Order 03—1 (eff. March 20, 2004). Accordingly, the motion judge did not err in hearing defendants' motion for summary judgment.

For all of the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

KARNEZIS and ERICKSON, JJ., concur.