SIXTH DIVISION
April 14, 2006

No. 1-04-3157

| | | |
|---|---|---|
| DENNIS HAMMOND and LENORA HAMMOND, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 L 6118 |
| | ) | |
| SBC COMMUNICATIONS, INC. (SBC), a Delaware | ) | Honorable |
| Corporation, AMERITECH CORPORATION, a | ) | Thomas R. Chiola, |
| Delaware Corporation, and ILLINOIS BELL | ) | Judge Presiding. |
| COMPANY, d/b/a Ameritech Illinois, | ) | |
| | ) | |
| Defendants-Appellees | ) | |
| | ) | |
| (Rick Ekstrom, Sue Ekstrom, and Catherine | ) | |
| Coleman, Administrator of the Estate of Elmer | ) | |
| Hartje, Deceased, | ) | |
| | ) | |
| Defendants). | ) | |

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Plaintiff Dennis Hammond was seriously injured in a motor vehicle accident involving a fallen tree. In an amended complaint filed in the circuit court of Cook County against defendants SBC Communications, Inc. (SBC), a Delaware corporation (SBC); Ameritech Corporation, a Delaware corporation (Ameritech); and Illinois Bell Telephone Company, d/b/a Ameritech Illinois (Illinois Bell), among others, plaintiffs Dennis and

1-04-3157

Lenora Hammond sought damages for personal injuries and loss of consortium.[1]  After hearing cross-motions for summary judgment, the circuit court granted judgment in favor of defendants.  Plaintiffs appeal, contending that defendants were negligent for failing to clear the tree from land along the highway in which defendants hold an easement.  Plaintiffs also contend that the court improperly denied their requests for admission of facts pursuant to Illinois Supreme Court Rule 216.  134 Ill. 2d R. 216.  Defendants have filed a joint brief in response.  Additionally, Illinois Telecommunications Association, Commonwealth Edison, and Nicor Gas Company have filed an *amicus curiae* brief in support of the judgment for defendants.  We affirm.

On May 28, 1998, around 10 p.m., Dennis Hammond was driving south on Illinois Route 47 in Plato Township, in Kane County, Illinois.  After plaintiff had passed the intersection with Bahr Road, a tree that stood on the southwest corner of the intersection allegedly fell across Route 47 and caused permanent physical injuries to

---

[1] Plaintiffs also named as defendants in this cause Catherine Coleman, administrator of the estate of Elmer Hartje, deceased, and Rick and Sue Ekstrom, who entered a farm lease with the decedent in 1997.  Those defendants are not parties to this appeal.

plaintiff when his vehicle either struck the tree or was struck by the tree.

Plaintiffs' six-count amended complaint, which was filed in February 2003, alleges that defendants SBC, Ameritech, and Illinois Bell (collectively, defendants)[2] owe a duty to the motoring public as holder of a right-of-way easement in land on the west side of Route 47. Elmer Hartje was the owner of property on the southwest corner of the Route 47 and Bahr Road intersection.[3] Defendants obtained the easement from Elmer and Hazel Hartje in 1963 for the right to construct, reconstruct, operate and maintain their telephone lines.

The amended complaint alleges that, on the day in question and "for approximately 50 years prior thereto, the decedent Elmer Hartje owned possessed, maintained, operated, controlled or had right to control the certain land and premises located at the southwest corner of Bahr Road and said Illinois Route 47, which ***

---

[2] The amended complaint alleges that the defendants have "merged" or "reorganized" with each other.

[3] Route 47 was established through a 1931 dedication of plat to the State of Illinois. The land governed by the dedication of plat includes a portion of tract 6, at the southwest corner of Route 47 and Bahr Road; the State obtained control of that portion of tract 6 by conveyance from a prior owner of the Hartje property. The right-of-way obtained by the State extends 40 feet east and 40 feet west of the center line of Route 47.

contained a certain tree *** approximately 37 to 38 feet west of the center line of Route 47 at that location *** [and] said tree was visibly slanting, leaning or bending so that its trunk and/or branches were extending over Illinois Route 47 while such highway was being used by the motoring public," including plaintiff. The tree in question allegedly was "within 35 feet of an Ameritech service box and said service box was approximately 35 to 40 feet west of the center line of Route 47."

Specifically, the amended complaint alleges that defendants SBC, Ameritech, and Illinois Bell:

> "as a possessor of land and particularly as a possessor of
> land along a highway, owed the plaintiff and other members
> of the motoring public a duty to use reasonable care for the
> protection of travelers on the highway to prevent an
> unreasonable risk of harm for those travelers on the highway
> arising from a condition of said tree or trees near the
> highway. Further, said defendants had a duty to inspect all
> trees which might be in such dangerous condition as to
> endanger travelers."

The amended complaint alleges defendants were negligent because they failed, among other things, to inspect, trim or remove the tree at issue, or to clear or keep cleared trees and other obstructions along Route 47.

Shortly after the amended complaint was filed, SBC and Ameritech filed a motion to dismiss pursuant to section 2-619 of the Illinois Code of Civil Procedure. 735 ILCS

5/2-619 (West 2002).  A short time later, plaintiffs filed the first of two sets of requests to admit facts or the genuineness of documents pursuant to Rule 216 (134 Ill. 2d R. 216), to which defendants filed responses and objections.

In May 2004, Illinois Bell moved for summary judgment, noting the pending motion to dismiss of its affiliates, SBC and Ameritech, and asserting that judgment in its favor would require a similar judgment in favor of SBC and Ameritech.  Later, plaintiffs filed the second set of Rule 216 requests for admission, followed by their motion for summary judgment.

On September 17, 2004, after hearing argument on the cross-motions for summary judgment, the court granted Illinois Bell's motion, found that the judgment applied to SBC and Ameritech, and entered judgment in favor of those defendants and against plaintiffs.  In its oral rulings, the court found, essentially, that the easement, by its plain language, was of a "limited nature" and, accordingly, defendants' rights and duties were limited to only that which was necessary to fulfill the specific purposes of the easement: that is, defendants did not have a right or a corresponding duty to remove a tree that did not interfere with their facilities.  The court also found that, based on the highway right-of-way, the State was the dominant estate holder rather than defendants.

In its written order entered that day, the court: denied plaintiffs' motion for summary judgment; entered summary judgment on all counts in favor of Illinois Bell, SBC, and Ameritech; and found that ruling rendered moot SBC and Ameritech's section 2-619 motion to dismiss with no substantive ruling on that motion having been made.

1-04-3157

The court also denied plaintiffs' Rule 216 motions and granted defendants' good-cause motions.  This appeal followed.

I

On appeal, the central contention raised by plaintiffs is that defendants owe a duty to the motoring public to clear trees from property along the highway in which defendants have an easement.  We disagree with that contention.

Summary judgment should be granted where the pleadings, depositions, affidavits, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2002); Vesey v. Chicago Housing Authority, 145 Ill. 2d 404, 411, 583 N.E.2d 538 (1991); Swope v. Northern Illinois Gas Co., 251 Ill. App. 3d 850, 853, 623 N.E.2d 841 (1993).  The grant of summary judgment is reviewed *de novo.*  McMahon v. Hines, 298 Ill. App. 3d 231, 235, 697 N.E. 2d 1199 (1998).     A complaint sounding in negligence must allege facts sufficient to show the existence of a duty, a breach of that duty, and injury to the plaintiff which is proximately caused by that breach.  Gouge v. Central Illinois Public Service Co., 144 Ill. 2d 535, 542, 582 N.E.2d 108 (1991); McDermott v. Metropolitan Sanitary District, 240 Ill. App. 3d 1, 26, 607 N.E.2d 1271 (1992).  The existence of a duty is a question of law to be determined by the court.  Gouge, 144 Ill. 2d at 542; see also Miller v. Highway Commissioner of North Otter Township Road District, 344 Ill. App. 3d 1157, 1164, 801 N.E.2d 599 (2003).  In making such determination, the court considers "whether the parties stood in such a relationship

to one another that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff." Gouge, 144 Ill. 2d at 542.

To determine the existence of a duty in a particular case, the court must weigh the reasonable foreseeability of the injury, the reasonable likelihood of the injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant. Gouge, 144 Ill. 2d at 542; Polak v. Person, 232 Ill. App. 3d 505, 510, 597 N.E.2d 810 (1992). Although the foreseeability of the injury is an important factor in deciding whether a duty exists, it is not solely determinative of that question. Hutchings v. Bauer, 149 Ill. 2d 568, 571, 599 N.E.2d 934 (1992); Polak, 232 Ill. App. 3d at 511-12. Rather, the foreseeability of harm must be balanced against the burdens and consequences resulting from the recognition of a duty. Hutchings, 149 Ill. 2d at 571. Absent a showing from which the court can infer the existence of a duty, summary judgment in favor of the defendant is proper. Swope, 251 Ill. App. 3d at 853-54.

Plaintiffs assert that the terms of the easement grant defendants not only the right to use of the property, but, also, a corresponding duty to maintain the property in reasonably safe condition. They assert that defendants were holders of the dominant tenement and, as such, they owed a duty to "take some remedial action" concerning the tree that fell, but they did nothing to ensure the safety of the motoring public. Defendants counter that the easement's plain language controls and limits both their rights and duties as to the property. We agree with defendants.

It is well established that an easement is " 'a right or a privilege in the real estate

of another' [citation]" (McDermott, 240 Ill. App. 3d at 20) which may be created by an express grant that determines the extent of the easement (Duresa v. Commonwealth Edison Co., 348 Ill. App. 3d 90, 101, 807 N.E.2d 1054 (2004)).  The same rules apply to grants of easements as to deeds and other written instruments: in the construction of instruments creating easements, courts ascertain and give effect to the intentions of the parties.  Duresa, 348 Ill. App. 3d at 101; McDermott, 240 Ill. App. 3d at 20.  That consideration should include the circumstances at the time of the conveyance, including the nature of the interest conveyed and the objective of the conveyance.  McDermott, 240 Ill. App. 3d at 20.  Where an easement exists by express grant, and the language thereof is clear and free from doubt, the use of the easement must be confined to the terms and purposes of the grant.  Duresa, 348 Ill. App. 3d at 101.  Courts generally construe easement agreements strictly, so as to permit the greatest possible use of the property by its owner.  Duresa, 348 Ill. App. 3d at 101; McMahon, 298 Ill. App. 3d at 236-37.

The easement at issue in the instant case exists by the express grant of the 1963 conveyance from the Hartjes.  The easement:

> "grants and conveys to [defendants] *** the right to
> construct, reconstruct, operate and maintain its telephone
> lines, consisting of such wires, cables and other fixtures as
> the grantee may from time to time require, with the right to
> permit the attachment of and to carry in conduit wires and
> cables of any other companies and to clear and keep

cleared such trees, roots, bushes and other obstructions

from the surface and subsurface as may be required upon,

along, and under the public roads, streets and highways, on

or adjoining the property which the undersigned own or have

an interest in."

It further provides that "[t]he confines of the west half of the public road known as Illinois

State Route 47 being part of the property" and "IT IS AGREED THAT SAID LINES WILL

BE PLACED WITHIN THE CONFINES OF THE PUBLIC HIGHWAY."

We believe that the easement here is not ambiguous and, thus, its plain

language controls. See Duresa, 348 Ill. App. 3d at 101. The easement conveys to

defendants the right to use the property for the limited purpose stated, which is "to

construct, reconstruct, operate and maintain" telephone lines and other telephone

equipment. Since the language is clear and free from doubt, the easement is to be

construed strictly and the use of the easement is to be confined to terms and purposes

1-04-3157

of the grant. See <u>Duresa</u>, 348 Ill. App. 3d at 101.[4]

At this juncture, we note that plaintiffs' claims as to those terms and purposes are couched in references to dominant and servient estates. To the extent such principles are applicable here, we note further that the principle of concurrent, rather than exclusive, use underlies the law concerning easements. <u>McMahon</u>, 298 Ill. App. 3d at 239. The user of the right of the easement has what is referred to as a dominant estate over the used land, which is referred to as the servient estate. <u>McMahon</u>, 298 Ill. App. 3d at 235-36. The easement holders, or owners of the dominant estate, are entitled to necessary use of the easement. <u>McMahon</u>, 298 Ill. App. 3d at 236. However, where, as here, the easement is limited in scope or purpose, the easement holder becomes a trespasser by misusing or exceeding the extent of the easement. <u>Duresa</u>, 348 Ill. App.

---

[4] Although we note plaintiffs' reliance upon case law of other jurisdictions, we confine our discussion to an examination of the express and specific terms of the easement. See <u>Duresa</u>, 348 Ill. App. 3d at 102.

3d at 102. Thus, where the easement is so limited, the easement holder may not increase the burden on the property owner. See Duresa, 348 Ill. App. 3d at 101-02; see also McMahon, 298 Ill. App. 3d at 236.

Plaintiffs' claim concerning the existence of a duty is based on what we believe to be a misreading of the plain language of the easement. Plaintiffs argue on appeal, as they did below, that defendants have a separate and distinct right, and corresponding duty, to clear the trees along Route 47. However, such reading would unreasonably parse a right to clear trees from the underlying purpose of the easement, which is, again, to maintain and operate telephone equipment.[5]

---

[5] We note that the court below referred to this during the hearing as a "right to bury cables." Although this is stated more narrowly than the entirety of the right granted defendants, to "construct, reconstruct, operate and maintain" both wires and "other fixtures"--in addition to cables--we believe, contrary to plaintiffs' assertions, the court correctly understood and stated the scope of the easement. It appears, rather, that the

1-04-3157



court merely avoided repeating the entire phrase and, in the context of the hearing,

simply used "the right to bury cables" as shorthand.

In plaintiffs' reading, defendants' right to clear trees is distinct from the right to operate and maintain their telephone equipment. However, were we to view the grant of the easement as plaintiffs urge (and as they articulated at the hearing below), as conveying a broad right to cut trees "as necessary along the highway," we would wonder (as did the court below), "As may be necessary for what?" We have already determined that the purpose of the easement was a limited one: "to construct, reconstruct, operate and maintain" telephone lines and other equipment. Because the purpose is limited, we reject plaintiffs' assertion that the easement grants a broad and apparently unlimited right and duty relating to all trees and other growth along the highway. See Duresa, 348 Ill. App. 3d at 101.

Again, because the primary purpose of the easement was to allow the operation and maintenance of telephone equipment--not to trim trees--we believe the other activities allowed by the easement must be read as relating to, not independent from, that primary purpose. The easement, after setting forth the primary purpose, adds, "*with* the right to permit the attachment of and to carry in conduit wires and cables \*\*\* and to clear and keep cleared such trees, roots, bushes and other obstructions." (Emphasis added.) Thus stated, the right to conduct these additional activities must relate to the purpose of the operation and maintenance of defendants' equipment.

To construe these rights, either to carry in conduit or to clear trees or roots, as independent of the primary purpose would be, we believe, an unreasonable reading of the 1963 grant of easement. Rather, because the purpose and scope of the easement is limited, the grant of the right to clear and keep cleared trees and other growth must

also be read as limited and within--not independent from--the scope of the easement. That is, the right to clear trees "as may be required" is a right only to do so as may be necessary for the operation or maintenance of defendants' equipment. When read in the context of the scope of the easement, then, the right to clear trees does not convey a broad or unlimited right to defendants; accordingly, the easement does not impose a corresponding, broad duty to do so either. Thus, construing the grant of this right strictly, as we must, the plain language of the easement limits the right to clear trees to doing so only for maintenance of defendants' telephone equipment. See Duresa, 348 Ill. App. 3d at 101; McMahon, 298 Ill. App. 3d at 236-37. Therefore, we find no broad right, or corresponding duty, to clear or otherwise maintain trees on the property for the safety of the motoring public.

Although our determination that the plain language of the easement imposes no duty on defendants to clear trees for the protection of motorists could end the discussion of duty, we choose to address, briefly, plaintiffs' remaining contentions concerning the existence of a duty. Plaintiffs also assert that such duty exists based on the McDermott court's holding that the defendant easement holder had not only the right but the duty to repair and maintain the drainage ditch that was the subject of the easement. See McDermott, 240 Ill. App. 3d at 26. We find such reliance, as well as plaintiffs' related claims concerning defendants' possession and control of the property, to be misplaced.

In McDermott, the plaintiff was injured after he fell into a storm water drainage ditch while he was riding his bicycle. There, the defendant Village of Palatine (Village)

conveyed the property to another entity, but retained an easement interest in the ditch.

A finding of tort liability against the Village was affirmed, based on the Village's use and

control of the ditch as holder of a utility easement and its failure to repair and maintain

the ditch. McDermott, 240 Ill. App. 3d at 26.

Contrary to plaintiffs' insistence, however, McDermott does not support a

conclusion that defendants here, as holder of the limited easement, would have an

apparently unlimited duty to maintain the trees on the property. There, the easement in

the drainage ditch was for the purpose of carrying storm water for the Village; thus, the

ditch was essential to the purpose of the easement. Here, on the other hand, the tree at

issue was not in any way related to the purpose of the easement. To impose a duty

here to repair and maintain, or to clear the tree, would

exceed the scope and purpose of the easement, which is, again, the operation and

maintenance of defendants' telephone equipment. Further, any possession or control

defendants have of the property is limited to the scope of the easement.[6]

---

[6] We do not address plaintiffs' related contention that defendants, rather than the

State, had possession and control of the property. We find plaintiffs' additional

assertions about the 1931 plat of dedication to the State and their claims that the State

1-04-3157

had less control of the property than defendants to be unavailing.

Plaintiffs also assert that defendants owe a broad duty as possessors of land, based largely upon an exception to nonliability set forth in the Restatement (Second) of Torts. See Restatement (Second) of Torts §363(2), at 258 (1965). This assertion, too, is unfounded.

The general rule set forth in section 363 (Natural Conditions) of the Restatement (Second) of Torts provides that "a possessor of land *** is [not] liable for physical harm caused to others outside of the land by a natural condition of the land." Restatement (Second) of Torts §363(1), at 258 (1965). The "natural condition of the land" includes "the natural growth of trees *** and other vegetation upon land not artificially made receptive to them." Restatement (Second) of Torts §363, Comment *b*, at 258 (1965). Under the general rule, then, even considering defendants to be "possessors" of the land for the limited purpose of their easement, liability for the tree would not attach because it is a natural condition of the land.

The exception to the general rule pertains to possessors of land "in an urban area" where such possessors are "subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway." Restatement (Second) of Torts §363(2), at 258 (1965). Plaintiffs rely upon this exception and its expansion in Mahurin v. Lockhart, 71 Ill. App. 3d 691, 390 N.E.2d 523 (1979).

In Mahurin, the court recognized the above exception in its consideration of the traditional rule of nonliability. Mahurin, 71 Ill. App. 3d at 692. There, however, the issue

was presented in the context of a residential landowner's duty to an adjoining landowner for an unsound condition of a tree upon his land. See Mahurin, 71 Ill. App. 3d at 692. The extension of the section 363(2) exception was to adjoining landowners (Mahurin, 71 Ill. App. 3d at 693), not to owners of rural property. Yet, in raising the contention that this exception applies, plaintiffs fail to address its requirement that the possessor of land be in an urban area or residential area.

Here, the record establishes that the land was neither urban nor residential, making the exception to nonliability unavailable. Plaintiffs' own pleadings would refute any characterization of the property in question as being in an urban area. Plaintiffs' amended complaint alleges that the tree was "*on or immediately adjacent to land that was plowed and cultivated* by the defendants, Rick and Sue Ekstrom" (emphasis added); plaintiffs' motion for summary judgment refers to the grantors' land, the Hartje property, as "farm land" and contains attached exhibits that support such characterization. One photographic exhibit shows the trunk of the fallen tree in, or at least "immediately adjacent to," a field of crops. Additionally, aerial photographs submitted with the motion show the entire surrounding area to be rural in character, with farm fields on all four corners of the intersection extending beyond the next visible roads in all directions. Given the clearly rural nature of the property in question, neither the Restatement exception for possessors of urban land (see Restatement (Second) of Torts §363(2), at 258 (1965)), nor the extension of that exception to owners of residential land (see Mahurin, 71 Ill. App. 3d at 693), would be applicable here.

Finally, we note the policy concerns raised by defendants and the *amici*. They

contend that the imposition of a broad duty on a public utility to cut or otherwise

maintain trees for purposes (*i.e.*, the safety of the motoring public) independent of the

operation of their equipment would involve significant burdens on the public utilities. We

agree.

Our courts have considered the economic burden in deciding that utility

companies did not owe a duty based on artificial conditions, such as utility poles, placed

by roadways. See <u>Gouge</u>, 144 Ill. 2d at 547 (if duty were placed on utility company to

ensure that its utility poles fall

" 'away from the roadway,' the economic costs would be staggering"); <u>Miller</u>, 344 Ill.

App. 3d at 1169 (while cost of relocating single utility pole may be relatively small,

economic costs of requiring survey of all poles, for determination whether placement

was in dangerous location, would be "staggering"). See also <u>Boylan v. Martindale</u>, 103

Ill. App. 3d 335, 344-45, 431 N.E.2d 62 (1982) (discussing considerations of public

policy in rejecting imposition of duty based on placement of utility pole); <u>Hoffman v.</u>

<u>Vernon Township</u>, 97 Ill. App. 3d 721, 726-27, 423 N.E.2d 519 (1981) (same). Since

our courts have determined that placing a burden upon utility companies to take

remedial steps related to artificial conditions, of their own creation, would be too great,

we believe the same would be true concerning natural conditions. Here, because

defendants did not plant the tree at issue, there would be more justification for applying

the same reasoning. Any duty to clear trees and other natural growth, for purposes

independent of the operating the telephone equipment, would impose a similarly

staggering economic cost on defendants. Accordingly, public policy concerns also

1-04-3157

support the judgment of the court below.

II

Having determined that, under the terms of the easement, defendants owed no duty to clear trees that do not interfere with the operation of their equipment, defendants were entitled to summary judgment in their favor. See Swope, 251 Ill. App. 3d at 853-54. Given this determination, we address only briefly plaintiffs' remaining contention, that the court improperly denied both sets of their requests to admit, prejudicing them by the denial, and improperly allowed defendants' late verification. We disagree with plaintiffs' contentions and find that, even if the requests had been admitted, the outcome would not change because defendants owed no duty.

As previously noted, plaintiffs filed two separate sets of requests to admit pursuant to Supreme Court Rule 216. The first set was was filed on May 13, 2003. Defendants SBC and Ameritech timely filed a joint response on June 9, 2003; Illinois Bell filed a separate response the same day. Both responses were signed by counsel, but not by the parties, and Illinois Bell's

was also supported by an affidavit of its employee Steven Krocka.

On July 12, 2004, after Illinois Bell moved for summary judgment, plaintiffs filed a second set of Rule 216 requests for admission. On August 9, 2004, defendants timely filed responses and objections that were signed by counsel; on August 24, 2004, defendants filed the same responses with the attached signature and verification of SBC employee Jeffrey Tucker. Plaintiffs subsequently filed a motion to strike the Rule 216 verification. Defendants filed a combined brief in opposition to the motion to strike

1-04-3157

and for a finding of good cause under Supreme Court Rule 183 (134 Ill. 2d R. 183), supported with numerous exhibits, including affidavits from employees Tucker and Krocker, attesting to their unavailability to verify the responses with the 28-day deadline.

Rule 216 provides that a party to an action may serve another party to that action with a written request for his admission of "any specified relevant fact" set forth in the request. 134 Ill. 2d R. 216(a); P.R.S. International, Inc. v. Shred Pax Corp., 184 Ill. 2d 224, 234, 703 N.E.2d 71 (1998). The party receiving the request must then either deny or object to the request within 28 days, but if that party does neither, the factual matters in the request are deemed judicial admissions. See 134 Ill. 2d R. 216(c); see also Banco Popular v. Beneficial Systems, Inc., 335 Ill. App. 3d 196, 208, 780 N.E.2d 1113 (2002) (admission of facts which cannot later be disputed results from failure to respond as required by Rule 216). However, because a request seeking to admit legal conclusions is improper in form (see P.R.S. International Inc., 184 Ill. 2d at 236), the failure to respond to that request does not result in a judicial admission. See P.R.S. International Inc., 184 Ill. 2d at 239; Hubeny v. Chairse, 305 Ill. App. 3d 1038, 1043, 713 N.E.2d 222 (1999) (failure to respond to request for admission of conclusion of law is irrelevant).

The parties dispute the standard of review applicable to the rulings on the requests to admit. Plaintiffs assert that the entire question concerning the propriety of the requests and the time extension for verification must be reviewed *de novo*. However, defendants correctly state that, while issues of which requests were proper under the rule and which requests should be deemed admissions are questions of law

to be reviewed *de novo* (<u>P.R.S. International, Inc.</u>, 184 Ill. 2d at 233-34), the determination of good cause for late verification is reviewed for an abuse of discretion (<u>Larson v. O'Donnell</u>, 361 Ill. App. 3d 388, 395, 836 N.E.2d 863 (2005)).

Although Rule 216 requests to admit must be strictly complied with (<u>Bright v. Dicke</u>, 166 Ill. 2d 204, 208-09, 652 N.E.2d 275 (1995); <u>Tires 'N Tracks, Inc. v. Dominic Fiordirosa Construction Co.</u>, 331 Ill. App. 3d 87, 92, 771 N.E.2d 612 (2002)), Rule 183 provides the trial court with discretion to allow responses to be served beyond the 28-day deadline set forth in Rule 216 (<u>Larson</u>, 361 Ill. App. 3d at 395). Before that discretion may "come into play," however, the responding party must show good cause for the extension. <u>Bright</u>, 166 Ill. 2d at 209; <u>Larson</u>, 361 Ill. App. 3d at 395. That is, the responding party cannot rely upon the "mere absence of inconvenience or prejudice to the opposing party" (<u>Bright</u>, 166 Ill. 2d at 209) nor mistake, inadvertence, or attorney neglect as the sole basis for a good-cause determination (<u>Larson</u>, 361 Ill. App. 3d at 396), but must, instead, assert some independent basis for allowing the untimely response (<u>Bright</u>, 166 Ill. 2d at 209; <u>Larson</u>, 361 Ill. App. 3d at 395).

Plaintiffs first argue that the court "felt that Rules 216 and 183 could be ignored" and "never even considered good cause." This assertion appears to be based solely upon the court's use of the term "good faith" in its oral ruling. Where the record here shows that the court referred to written motions and exhibits before it, which plainly sought a good-cause finding, and the court's written order clearly granted such motion, we are not persuaded by plaintiffs' claim that the court ignored the applicable supreme court rule and thus reject plaintiffs' assertion that the court failed to make the requisite

good-cause finding.

Plaintiffs then argue that good cause does not exist for the late verification because defendants failed to apply for an extension before the deadline to respond had passed. This claim is refuted by the language of Rule 183. Rule 183 provides that the court "may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either *before or after* the expiration of the time." (Emphasis added.) 134 Il. 2d R. 183.

Next, plaintiffs attack specific grounds for the delay in verification, particularly those concerning affiant Tucker's unavailability to timely verify the responses. They also maintain that the first set of responses, which contained Krocka's affidavit, was not properly verified. Contrary to plaintiffs' contention, defendants did not claim the late verification should be allowed due to lack of prejudice or mistake. Defendants instead offered the affiants' unavailability as an independent ground for allowing the late verification. We disagree with plaintiffs' implicit position that the independent ground offered was not good enough; in so doing, we note that the situation here was unlike those in cases relied upon by plaintiffs, where the late-responding parties offered no good cause for their untimely responses. See <u>Moy v. Ng</u>, 341 Ill. App. 3d 984, 793 N.E.2d 919 (2003); <u>Tires 'N Tracks, Inc.</u>, 331 Ill. App. 3d 87, 771 N.E.2d 612; <u>Harris Bank St. Charles v. Weber</u>, 298 Ill. App. 3d 1072, 700 N.E.2d 722 (1998). Rather, based upon the grounds presented, that of the affiants' unavailability, we do not believe the court abused its discretion by granting the good-cause extension.

Moreover, even were we to find that the good-cause motion should not have been granted, a consideration of the requests would lead us to conclude that, ultimately, the court did not err in granting summary judgment for defendants.  See Larson, 361 Ill. App. 3d at 396.  Upon consideration of whether the requests for admission made by plaintiffs were proper (see Larson, 361 Ill. App. 3d at 396), certain requests would be deemed improper as seeking conclusions of law and such requests would not be admitted (see Larson, 361 Ill. App. 3d at 396; Hubeny, 305 Ill. App. 3d at 1043).  The remaining requests contain either facts already admitted by defendants or factual issues that, based on our earlier determination that no duty is owed, would not change the outcome of the ruling on defendants' motion for summary judgment.  Accordingly, because those requests are not dispositive, they are not considered separately.  See Larson, 361 Ill. App. 3d at 396.  Again, defendants would be entitled to summary judgment as a matter of law because they do not owe a duty to the motoring public to clear and keep cleared the trees or other growth on the easement property.  See Swope, 251 Ill. App. 3d at 853-54.  Thus, even if defendants' good-cause motion had not been granted, the facts that would be admitted from plaintiffs' requests would not alter the ruling on defendants' motion for summary judgment.

Therefore, the circuit court properly granted summary judgment in favor of defendants.  Accordingly, we affirm the judgment of the circuit court.

Affirmed.

TULLY and O'MALLEY, JJ., concur.

1-04-3157